## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HAREL TALASAZAN

　　　　　Plaintiff,

　　v.

MICROSOFT CORPORATION,
OFFICE OF BAR COUNSEL,
BOARD OF BAR OVERSEERS,
DOROTHY ANDERSON,
MATTHEW STEWART, AND
DOES 1-10

　　　　　Defendants.

Civil Action No.

**COMPLAINT FOR INJUNCTIVE RELIEF**

FILED
IN CLERKS OFFICE

2022 OCT 14 PM 2: 12

U.S. DISTRICT COURT
DISTRICT OF MASS.

## <u>INTRODUCTION</u>

1.　　　It is a fundamental and well established tenant that every person is entitled to due process of law. "For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified[.]" Baldwin v. Hale, 68 U.S. 223 (1863) [and cases cited]. Plaintiff Harel Talasazan brings this action against Defendants for, among other things, constitutional violations relating to remote depositions taken virtually and proceedings accessible to Talasazan who is deaf in his left ear, hearing impaired, and hard of hearing.

1

## THE PARTIES

2.      Plaintiff Harel Talasazan ("Talasazan") is a resident of Los Angeles, California and a licensed attorney in the Commonwealth of Massachusetts. At all relevant times, Talasazan resided in California, which required Talasazan to travel across the country from Los Angeles to Boston on a regular and continuous basis.

3.      Defendant Microsoft Corporation ("Microsoft") develops, engineers, manufactures, licenses, and supports a wide range of software products for a variety of computing devices. Microsoft is incorporated in the state of Washington. Microsoft's principal place of business is One Microsoft Way Redmond, WA 98052.

4.      Defendant Board of Bar Overseers ("BBO") is an independent administrative body established in 1974 by the Supreme Judicial Court under S.J.C. Rule 4:01 to investigate and evaluate complaints of unethical conduct against attorneys. The Board of Bar Overseers is funded by members of the Bar of the Commonwealth of Massachusetts.

5.      Defendant Office of Bar Counsel ("Bar Counsel") is an independent administrative body established in 1974 by the Supreme Judicial Court under S.J.C. Rule 4:01 to investigate and evaluate complaints of unethical conduct against attorneys. Bar Counsel is funded by members of the Bar of the Commonwealth of Massachusetts.

6.      Defendant Dorothy Anderson, Esquire ("Anderson") individually and in her personal capacity is an Attorney licensed to practice law in the state of Massachusetts. Anderson is also the first assistant Bar Counsel for the Office of Bar Counsel. Anderson is a resident of Newton, Massachusetts.

7.      Defendant Matthew Stewart ("Stewart"), individually and in his personal capacity is an employee of the office of Bar Counsel. Stewart is an investigator for the office of

bar counsel. Stewart is a resident of Somerville, Massachusetts.

8.      Plaintiff does not know the true names of defendants DOES 1 through 10, inclusive, and therefore sues them by those fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of those defendants was in some manner proximately responsible for the events and happenings alleged in this complaint and for plaintiff's injuries and damages. Talasazan reserves the right to and will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1-10 are ascertained.

## JURISDICTION AND VENUE

9.      Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on questions of federal constitutional law, Right to Financial Privacy Act.

10.     Concurrent Jurisdiction exists under Article III, Section 2 of the United States Constitution

11.     Venue is proper in this Court because Defendants reside in this District and no real property is involved. 28 U.S.C. § 1391(b)(1). Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District. 28 U.S.C. § 1391(b)(2).

12.     Talasazan has standing to bring this case. Defendants' actions have caused and will continue to cause an imminent, concrete, and irreparable risk, injury and harm to Talasazan's constitutional rights, property rights, his rights of citizenship, and injury to Talasazan.

13.     This Court is authorized to grant the requested injunctive relief pursuant to Federal Rule of Civil Procedure 65 and 5 U.S.C. § 705.

## FACTS

14.     Talasazan is an attorney who strives to serve his clients with zealous advocacy, and for the most part of his professional career, Talasazan served persons from underserved communities, representing such persons primarily in the context of landlord and tenant related

3

communities, representing such persons primarily in the context of landlord and tenant related disputes, litigation and defense. Moreover, Talasazan actively keeps himself up to date with the Federal and Massachusetts case law since he became a member of the bar of Massachusetts. In By way of example, in the past year Talasazan found typos or inadvertences in the text of two slip opinions published by the Supreme Judicial Court because, he enjoys reading such opinions, and notified the Reporter of Decision in both of those said regards, which the Reporter so responded to thankfully to Talasazan for bring the matter to the Reporters attention.

15.     Talasazan is also disabled. As a result of a traumatic head injury sustained in or about May 12, 2007, Talasazan is permanently and totally deaf in his left ear and, experiences sudden onsets of vertigo and tenonitis in his left ear on a day to day basis. Prior to being admitted to the Bar, Talasazan provided the Massachusetts Board of Bar Examiners written notice that, among other things Talasazan is deaf in his left ear and hard of hearing.

16.     In or about August 8, 2018, Talasazan moved with his wife from Boston, Massachusetts to southern California. The reason for moving to Los Angeles related to a position his wife accepted there as a neuropsychologist in a medical care and rehabilitation center facility. Talasazan was also born and raised in Los Angeles and his family members live there.

17.     From August 8, 2018 through and up to August 13, 2022, Talasazan would travel back and forth from Los Angeles, California to Boston, Massachusetts in order to provide his clients effective representation and to uphold his oath as an attorney to the Courts of the Commonwealth of Massachusetts. Talasazan would travel back home, from Boston, Massachusetts to Los Angeles, California to his wife and his family ("back and forth travel").

18.     On average, Talasazan estimates that the back and forth travel would occur once every two weeks (or twice every month) throughout year 2019, year 2020, and up to the last day of July, 2021 ("frequent back and forth travel"). Thereafter, back and forth travel would occur

less and less than once every two weeks.

19.     Talasazan never charged his clients the costs and expenses pertaining to back and forth travel nor the lodging costs and expenses he had to pay when he stayed in Boston or any other city or town in the Commonwealth of Massachusetts for the purpose of working as an Attorney or upholding his oath as an Attorney.

20.     The back and forth travel concerning Talasazan includes, but is not limited to, the time since the outbreak of the coronavirus disease 2019 ("Covid"), the state of emergency and the ongoing pandemic resulting from Covid, and all city, state, and federal orders relating to and as a result of the outbreak of Covid.

21.     On or about August 5, 2021 Anne T. Brown, a secretary or assistant who works for Anderson at the Office of the Bar Counsel e-mailed Talasazan correspondence regarding Board of Bar Overseers File Number 1-21-00269786 ("786"). Said correspondence included a link provided or hosted by Citrix Systems, Inc. (Citrix), and upon information and belief, Citrix is domiciled in Florida with a local office located in Burlington, Massachusetts. Said e-mail contained a link to a downloadable file which, upon Talasazan so clicking and without notice to Talasazan before so clicking, instantaneously captured Talasazan's whereabouts by internet protocol address or some other similar way or method of such capture, in or around Los Angeles, California, where Talasazan was located at that point in time for Bar Counsel to record and store.

22.     After downloading said file in the correspondence regarding Board of Bar Overseers File Number 1-21-00269786 ("786"), Talasazan opened a document in said file which was a letter from Anderson stating that a formal investigation has commenced and asking Talasazan to cooperate in the Office of Bar Counsel's investigation ("formal 786 investigation").

23.     Talasazan incorporates by reference each and every pleading, motion, exhibit, and document filed in Case Docket Number 2081CV01126 in the Middlesex Superior Court of

Massachusetts, Case Docket Number 2021SJC0240 in the Supreme Judicial Court of

Massachusetts, Case Docket Number 2012CV01126 in the Newton District Court, and

2181CV04773 in the Middlesex Superior Court of Massachusetts as if fully set forth herein.

24.    The formal 786 investigation arises out of information related by assistant clerk

of the Supreme Judicial Court Stephen Cronin ("Cronin") to Bar Counsel. Upon information and

belief, Talasazan knows that Cronin is the relator in connection with the formal 786 investigation

because Cronin had been the clerk who primarily dealt with Talasazan in Case Number

2021SJC0240 ("0240") which formal 786 investigation is based on. In or about August 25, 2022,

Anderson admitted to Talasazan that Cronin was the relator regarding the formal 786

investigation.

25.    Upon information and belief, 0240 involves the fraudulent transfer of loans, real

estate mortgages, and securities having a connection with the names of persons so named therein

also the same or similar names as parties in the probate court who came before that particular

judge at some point in time, based on public records.

26.    Upon information and belief, the confluence of the variation or the order of the

full name of each person as a named party before the particular judge in each of three judgments

he or another Judge so rendered in that Court had, at least in one instance, a connection to real

property the particular Judge had a personal interest in, which Talasazan used public records to

determine.

27.    Amassing these public records, so as to make an informed belief before filing

0240 took Talasazan a tremendous amount of time and resources. Public records in each of the

three specified cases support the reasonability of Talasazan's said informed belief.

28.    The Formal 786 investigation accused Talasazan of (1) violating the rules of

professional conduct by filing a complaint with the Court which lacked a sufficient non-frivolous

6

basis, (2) being disruptive in a courtroom, and (3) that he is mentally or physically impaired to practice law. upon information and belief in respect to all subsequent events and actions thereafter, concerns information related by the former client Talasazan represented, to bar counsel as a source of information.

29.    The day Talasazan filed the petition in 0240 with the Supreme Judicial Court, Talasazan asked if he could pay the filing fee in cash, and Cronin responded that Talasazan could pay the filing fee with cash.

30.    Cronin failed to provide Talasazan $5.00 due in change when Talasazan issued $420.00 in cash as payment for the $415.00 filing fee for filing 0240, which thereby necessitated Talasazan to change his schedule, cancel a flight, and return to Boston on a different date than he originally scheduled, which Talasazan did at his own expense.

31.    When Talasazan came to pick up the said $5.00 due in change, Cronin provided Talasazan a hand written receipt which fabricated the date on the receipt such that it predated the filing date of 0240 which, Talasazan made Cronin correct upon sight and Cronin endorsed the said receipt and then handed it to Talasazan.

32.    During 0240 Talasazan's ability to present his case became more and more difficult to do. Upon information and belief, Talasazan's computer was hacked; there was spyware on Talasazan's phone which, more than once, Talasazan reported to Apple, Inc. and which Apple responded to; and, Talasazan was threatened by people unknown to him, and an attempt to harm Talasazan had occurred.

33.    Talasazan responded to the formal 786 investigation and denied each and every accusation. Thereafter, Talasazan travelled to Boston for the specific purpose of requesting copies of all of the pleadings, motions, and exhibits so submitted in 0240, copying and personally delivering such documents to the office of Bar Counsel in relation to the formal 786

investigation.

34.     On or about August, 24 2021 Talasazan received an e-mail from Anne T. Brown, who is a secretary for Anderson at the office of Bar Counsel, regarding the scheduling of a remote deposition in relation to the formal 786 investigation for September 23, 2021 at 10:00 AM ("786 deposition").

35.     The proposed 786 deposition was to be conducted virtually on the Microsoft Teams application. Anderson appeared to be the creator or host of the event, namely the 786 deposition on the Microsoft Teams application.

36.     On or about June 28, 2019 Microsoft Corporation and the Commonwealth of Massachusetts had entered, accepted and agreed to an Agreement for Professional Services (#T001197-234653-275348) by and between Microsoft Corporation and the Commonwealth of Massachusetts ("Agreement 5348"). Attached herewith as **Exhibit 1** is a true and correct copy of Agreement 5348.

Agreement 5348 provides, among other things, the following:

ATTACHMENT B - TERMS AND CONDITIONS
Microsoft and Customer agree that notwithstanding Section 15 of the Commonwealth Terms and Conditions, terms in this Attachment B "Terms and Conditions" hereby amend and supersede terms of higher precedence in Statewide Contract ITS60, only where such terms are expressly referenced.
"Definitions. In this Agreement, a "party" or "parties" means Customer and/or Microsoft as the context requires.
In addition, the following definitions apply:
"Affiliate" means (i) with regard to Customer, any government agency, department, office, instrumentality, division, unit or other entity of Customer's state or local government that is supervised by or is part of Customer, or which supervises Customer or of which Customer is a part, or which is under common supervision with Customer; together with, as mandated by law, any county, borough, commonwealth, city, municipality, town, township, special purpose district, or other similar type of governmental instrumentality located within Customer's state jurisdiction and geographic boundaries; provided that a state and its Affiliates shall not, for purposes of this definition, be considered to be Affiliates of the federal government and its Affiliates; and (ii) with regard to Microsoft, any legal entity that Microsoft controls, which controls Microsoft, or which is under common control with Microsoft. "Control" means ownership of more than 50% interest of voting securities in an entity or the power to direct the management and policies of an entity;
"Customer" means the legal entity that has entered into this Agreement;

"Customer Data" means all data, including all text, sound, software, image or video files that are provided to Microsoft by, or on behalf of, Customer and its Affiliates in connection with Professional Services under this Agreement; 5. "Compliance with applicable laws, privacy and security."

a.       "Customer consents to the processing of personal information by Microsoft and its agents to facilitate the subject matter of this Agreement. Customer will obtain all required consents from third parties (including Customer's contacts, resellers, distributors, administrators, and employees) under applicable privacy and data protection law before providing personal information to Microsoft. Microsoft will comply with all applicable state laws, including without limitation M.G.L. c. 66A, M.G.L. c. 93H, and M.G.L. c. 931 when handling and processing personal information."

b.       "Personal information collected through Professional Services (i) may be transferred, stored and processed in the United States or any other country in which Microsoft or its contractors maintain facilities and (ii) will be subject to the privacy terms specified in the Use Rights. Microsoft will abide by the requirements of European Economic Area and Swiss data protection law regarding the collection, use, transfer, retention and processing of personal data from the European Economic Area and Switzerland."

c.       "U.S. Export. Microsoft Products, Fixes and Services Deliverables are subject to U.S. export jurisdiction. Customer must comply with all applicable international and national laws, including the U.S. Export Administration Regulations, the International Traffic in Arms Regulations, and end-user, end use and destination restrictions by U.S. and other governments related to Microsoft Products, services, and technologies."

"Fix" or "Fixes" means Product fixes, modifications, enhancements, or their derivatives, that Microsoft either releases generally, (such as Product service packs) or that Microsoft provides to Customer when performing Professional Services to address a specific issue (including, but not limited to, workarounds, patches, bug fixes, beta fixes and beta builds);

"Joint Ownership" means each party has the right to independently exercise any and all rights of ownership now known or hereinafter created or recognized, including without limitation the rights to use, reproduce, modify and distribute the Services Deliverables for any purpose, without the need for further authorization to exercise any such rights or any obligation of accounting or payment of royalties;

"Microsoft" Means the Microsoft Affiliate that has entered into this Agreement and its Affiliates, as appropriate;

"Online Services" means the Microsoft-hosted services identified as Online Services in the Microsoft Product Terms. Online Services are not offered under the scope of this Agreement;

"Online Services Terms" means the additional terms that apply to Customer's use of Online Services published on the Volume Licensing Site and updated from time to time;

"Pre-Existing Work" means any computer code or materials developed or otherwise obtained independently of the efforts of a party under this Agreement;

"Product" means all products identified in the Product Terms, such as all Software, Online Services and other web-based services, including pre-release or beta versions;

"Product Terms" means the document that provides information about Microsoft Products. The Product Terms document is published on the Volume Licensing Site and is updated from time to time;

"Professional Services" means all Product support services and Microsoft consulting services or advice provided to Customer under this Agreement. "Professional Services" does not include Online Services;" Pg. 8.

""Service Deliverables" means any materials, other than Products or Fixes, that Microsoft leaves with Customer at the conclusion of Microsoft's performance of these Professional Services;

"Software" means licensed copies of Microsoft software identified on the Product Terms. Software does not include Online Services or Services Deliverables, but Software may be part of an Online Service;

"Trade Secret" means information that is not generally known or readily ascertainable to the public, has economic value as a result, and has been subject to reasonable steps under the circumstances to maintain its secrecy;

"use" and "run" means to copy, install, use, access, display, run or otherwise interact with;

"Use Rights" means, with respect to any Product licensing program, the use rights or terms of service for each Product published on the Volume Licensing Site and updated from time to time. The Use Rights supersede the terms of any end user license agreement that accompanies a Product. The Use Rights for Software are published by Microsoft in the Product Terms. The Use Rights for Online Services are published in the Online Services Terms;" Pg. 9

"5.     Compliance with applicable laws, privacy and security.
a.     Customer consents to the processing of personal information by Microsoft and its agents to facilitate the subject matter of this Agreement. Customer will obtain all required consents from third parties (including Customer's contacts, resellers, distributors, administrators, and employees) under applicable privacy and data protection law before providing personal information to Microsoft. Microsoft will comply with all applicable state laws, including without limitation M.G.L. c. 66A, M.G.L. c. 93H, and M.G.L. c. 93I when handling and processing personal information." Pg. 10.

"6.     "Warranties."
a.     "Limited warranties and remedies - Professional Services. Microsoft warrants that it will perform Professional Services with professional care and skill. If Microsoft fails to do so, and Customer notifies Microsoft within 120 days of the date Professional Services were performed, then Microsoft will, at its discretion, either re-perform the Professional Services or return the price paid for them. Except for breach of warranty resulting in a breach of Customer Data, these remedies are Customer's sole remedies for breach of warranties in this section Customer waives any breach of warranty claims not made during the warranty period."
b.     "Exclusions. The warranties in this section do not cover problems caused by accident, abuse or use in a manner inconsistent with this Agreement, including failure to meet minimum system requirements. These warranties do not apply to free, trial, pre-release or beta Products or to components of Products that Customer is permitted to redistribute. DISCLAIMER. Except for the limited warranties above, Microsoft provides no other warranties or conditions and disclaims any other express, implied or statutory warranties, including warranties of quality, merchantability, fitness for a particular purpose, title and non-infringement." Pg. 11

"7. Defense of third party claims.
The parties agree to the following clarification of Section 11 of the Commonwealth
Terms and Conditions. Microsoft will defend Customer against the third-party claims
described in this section and will pay the amount of any resulting adverse final
judgment or approved settlement, but only if Microsoft is promptly notified in writing
of the claim. Customer may permit Microsoft to control the defense and any
settlement of such claim, or Customer may permit the Commonwealth of
Massachusetts Attorney General to control the defense and settlement of the claim.
Customer must provide Microsoft with all reasonably requested assistance,
information and authority. Microsoft will reimburse Customer for reasonable out-of-
pocket expenses it incurs in providing assistance, provided that Customer will pay its
attorney's fees if represented by the Commonwealth of Massachusetts Attorney
General. This section describes the parties' sole remedies and entire liability for such
claims." Pg. 11

"a.      By Microsoft. Microsoft will defend against any third-party claim, and will
indemnify and hold harmless Customer for any damages finally adjudicated or
amounts provided in an approved settlement, and arising from such claim, to the
extent it (i) alleges that any Fix or Services Deliverable made available by Microsoft
for a fee and used within the scope of Section 3 of this Agreement (unmodified from
the form provided by Microsoft and not combined with anything else) misappropriates
a trade secret or directly infringes a patent, copyright, or trademark or other
proprietary right of a third party, or (ii) results from personal injury damages or
tangible property damages. Without limitation to the foregoing sentence, if Microsoft
is unable to resolve a third-party infringement claim under commercially reasonable
terms, it may, at its option, either (1) modify or replace the Fix or Services
Deliverable with a functional equivalent; or (2) terminate Customer's license and
refund any fees paid for such Fix(es) and Services Deliverable(s). Microsoft will not
be liable for any claims or damages due to Customer's continued use of a Product, Fix
or Services Deliverable after being notified to stop due to a third party claim.
b.      By Customer. Customer and Microsoft acknowledge and agree that pursuant
to Article 84, Section 1 of the Amendments to the Massachusetts Constitution. " pg.
11.
"(https://malegislature.gov/Laws/Constitution#amendmentArticleLXXXIV) or as
otherwise provided under applicable State law, Customer shall have no obligation to
indemnify or defend Microsoft against any third-party claim." Pg. 12


37.      Anderson was a licensed user of, used and benefitted from Agreement 5348 and

the products and services provided by Microsoft Corporation under Agreement 5348 including,

but not limited to holding or conducting the remote deposition virtually on the Microsoft Teams

application relating to the 786 deposition and Talasazan.

38.      Stewart was a licensed user of, used and benefitted from Agreement 5348 and

11

the products and services provided by Microsoft Corporation under Agreement 5348 including, but not limited to holding or conducting the remote deposition virtually on the Microsoft Teams application relating to the 786 deposition and Talasazan.

39.     At all relevant times, the software and applications Microsoft creates, engineers, develops, and packages to consumers, commercial entities, government entities and agencies including, but not limited to the Microsoft Teams application Anderson, Stewart, Bar Counsel, and BBO used in the 786 deposition was offered, transacted, or sold in interstate commerce of the United States.

40.     At no point in time did the Office of Bar Counsel furnish reasonable accommodation to Talasazan nor ask Talasazan if he needed reasonable accommodation.

41.     Talasazan does not recall ever expressly agreeing to the remote deposition. With that said, Talasazan appeared remotely to the formal 786 investigation virtual hearing. A person who administers oaths was present at the start of the hearing up to, upon information and belief, about 5 minutes after the hearing began where said administrator exited, signed off or was no longer appearing in said virtual hearing thereafter.

42.     Anderson and Stewart appeared remotely to the virtual hearing and remained appearing remotely throughout the entire hearing.

43.     During the hearing, Anderson asked questions regarding the procedural posture, facts and circumstances relating to 0240. Talasazan responded to those questions and answered.

44.     At a certain point during the remote deposition, Anderson shifted the subject of her questions or line of questioning to a question regarding payment or transactions involving Talasazan. Talasazan immediately objected on the grounds that such said question was irrelevant. Anderson demanded that Talasazan answer the question and appeared to be outraged, and verbally threatened Talasazan with seeking a court order if he refuses to answer. Talasazan

12

recalls that at a certain point thereafter he said subject to and notwithstanding his objection so made, or similar words to such, he then responded to Anderson's said irrelevant question.

45.     Talasazan also recalls saying he reserves all rights, privileges, and immunities during the hearing, to which Anderson asked what Talasazan meant by those said terms, to which Talasazan recalls saying as broad as those terms apply or something similar to such.

46.     Shortly after the hearing concluded Stewart e-mailed Talasazan a letter requesting his payment or transaction records and Talasazan objected, again, in response.

47.     On or about September 29, 2021 Anderson and Talasazan conferred over the phone with regard to the payment or transaction records Anderson requested. Talasazan reiterated his said objection he already made. Anderson threatened Talasazan with seeking to have Talasazan administratively suspended from the practice of law.

48.     On or about October 4, 2021 Talasazan sent a letter under reservation of rights stating that he will produce the documents regarding his payment or transaction records relating to 786 under protest.

49.     On or about October 22, 2021 Stewart sent an e-mail with a letter to Talasazan. Said letter related to a second BBO file numbered 1-21-00270817 ("817") which a former client (or "informant") made a complaint against Respondent and which Bar Counsel accused the Respondent of violating Rule 3:07 of the Massachusetts Rules of Professional Conduct, which is a rules regarding a Lawyer not being a witness in a case. Said correspondence included a link provided or hosted by Citrix Systems, Inc. (Citrix), and upon information and belief, Citrix is domiciled in Florida with a local office located in Burlington, Massachusetts. Said e-mail contained a link to a downloadable file which, upon Talasazan so clicking and without notice to Talasazan before so clicking, instantaneously captured Talasazan's whereabouts by internet protocol address or some other similar way or method of such capture, for Bar Counsel to record

and store

50.     Talasazan denied the accusation the same said date under reservation of rights, and further explained the particular circumstances that on or about July 25, 2022 the informant had a paper document case file and that, if anything, the only thing related to such said accusation had to do with the informant sending Talasazan, among other things, a book with an origami shaped pig the informant folded, placed in between the pages of said book so as to be as a bookmark for Talasazan and, upon Talasazan opening said book, a white powder substance unraveled out of the spine of said book and powdered whatever was beneath said book in his home office in Los Angeles. Thereafter, whatever came into contact with said powder which included, among other things files and documents which were part of said informant's case file Talasazan disposed, and that, whatever remained of the said informant's case file Talasazan plastic wrapped and kept and stored such that Bar Counsel may take possession of the remainder of the case file or delegate someone to take it, provided that Talasazan receives reasonable prior notice. Bar Counsel refused and up to 10/12/2022 Bar Counsel has not taken whatever remains of informant's said case file.

51.     On or about December 7, 2021 Bar Counsel issued a subpoena to Bank of America, ordering the production of records of Respondent's bank accounts. Talasazan received notice about this subpoena on or about December 21, 2021 and shortly thereafter, served a motion to quash the subpoena ("Motion to Quash No. 1"). While Motion to Quash No. 1 was pending, Talasazan retained Counsel ("Talasazan Counsel").

52.     Talasazan's Counsel and Anderson came to an agreement in respect to the scope of Subpoena No. 1 such that only the Interest on Lawyers Trust Account ("IOLTA") records would have to be turned over by Talasazan and nothing further.

53.     Talasazan's Counsel and Anderson agreed that the Talasazan's IOLTA account

information and statements for a limited timeframe would be so turned over to Anderson.

54.     After so furnishing the IOLTA records, Talasazan's Counsel withdrew the Motion to Quash Subpoena No. 1.

55.     Stewart purportedly reviewed the documents and, even though Stewart is not licensed to practice law, Stewart "concluded" in a letter dated and signed by him April 15, 2022 that Talasazan had violated a Rule of Professional Conduct in respect to two transactions involving electronically transferred funds from Talasazan's IOLTA account to another account.

56.     Talasazan Counsel shortly withdrew after Stewart's said April 15, 2022 letter. Among other things that Talasazan received from Talasazan's Counsel after said withdrawal was the video of the deposition taken virtually on Microsoft Teams on or about September 23, 2021. Talasazan viewed the video shortly after receiving it, and immediately noticed that the video had been cut out or trimmed such that the portion of the time during the deposition involving the objections to Anderson's said irrelevant question and reservations made, among other things, were removed from the video.

57.     Talasazan discussed the issue with Talasazan's Counsel who, had already withdrawn at that point in time and sent to Talasazan and copied Anderson in an e-mail dated May 5, 2022 which reiterated a discussion and agreement Talasazan's Counsel had with Anderson that allowed Talasazan to make whatever revisions he deem necessary on the errata sheet for said deposition; and, that Talasazan can turn in said errata sheet to Anderson by the end of the week.

58.     Talasazan responded to the said May 5, 2022 email, writing it is the video itself that is infected with the alteration.

59.     On May 3, 2022 Stewart sent an e-mail to Talasazan regarding a request dated April 14, 2022 that had been made for records to Talasazan's Counsel. Stewart emailed

Talasazan so as to follow up with the records he so requested and, acknowledging that Talasazan was without counsel, provided Talasazan until April 14, 2022 to respond.

60.     Talasazan emailed Anderson and copied Stewart on May 4, 2022 with a letter attached therein stating that Talasazan had become appraised that Anderson is seeking to subpoena Talasazan's bank again, and as such, Talasazan requested a copy of any document so seeking such a subpoena.  Stewart responded to Talasazan's email and shortened the extension he provided to Talasazan from April 14, 2022 to April 9, 2022.

61.     On May 5, 2022 Talasazan sent an email to Stewart in which Talasazan denied the accusation Stewart made, objected to turning over the records so requested, and cited to authority in support of his denial and objection.

62.     Anderson thereafter sought a second subpoena ("Subpoena No. 2") on or about May 5, 2022, and served Talasazan's bank for records concerning Talasazan's business checking account.

63.     Talasazan's billing address for his business checking account was not in Massachusetts at the time Subpoena No. 2 was served.

64.     Talasazan filed a Motion to Quash Subpoena No. 2 dated May 25, 2022 and made a number of arguments regarding the state and federal constitutional violations and deprivations he had been subject to and continued to experience from 786 and 817 therein. Attached herewith as **Exhibit 2** is a true and correct copy of the Motion to Quash Subpoena No. 2 Talasazan submitted, INITIAL INFORMANT COMPLAINT EXCEPTED.

65.     Anderson opposed the Motion even though the bank had sent her a copy of a letter before submission of her opposition indicating, among other things, that the address on Subpoena No. 2 was inccorrect since the said account commanded to be produced was located in California not, as the subpoena specifies, in Massachusetts.

16

66.     Anderson submitted the Opposition to the Motion to Quash Subpoena No. 2 dated 06/08/2022 which a day thereafter the board chair of the BBO denied the Motion to Quash Subpoena No. 2. Attached herewith as **Exhibit 3** is a true and correct copy of the Opposition to Motion to Quash No. 2. Talasazan filed and served a reply and motion to strike the same day as the said denial, arguing that, among other things the subpoena was served to a Massachusetts address when the correct address was located in California. Attached herewith as **Exhibit 4** is a true and correct copy of the Reply to the Opposition to the Motion to Quash Subpoena No. 2, with exception to an Exhibit, Redacted here. The Board chair denial of the Motion to Quash stood, after review of the reply. Attached herewith as **Exhibit 5** is a true and correct copy of the Board Chair decision.

67.     Anderson has been accused of withholding things from opposing counsel in a matter before such that the Board reopened the matter. In the Matter of Discipline of an Attorney SJC-09667 (2007); Oral Arguments (https://youtu.be/iXXGqM_MQOI).

68.     On June 13, 2022 Talasazan was again invited to participate a remote deposition to be taken virtually on Microsoft Teams with Anderson and Stewart, scheduled for July 7, 2022. Notice to Talasazan was made by Ms. Brown, a secretary or assistant who works with Anderson at the office of Bar Counsel.  Talasazan objected to the said deposition in an email with a letter attached therein dated June 17, 2022

69.     Following the decision made regarding the Motion to Quash Subpoena No. 2, Talasazan's bank notified Talasazan that it intends to comply with the decision made by the board regarding the Motion to Quash Subpoena No. 2. Talasazan sent a letter in response to the Bank stating that, among other things, the Order runs afoul of the law and that Subpoena No. 2 was fatally defective on its face such that it is Anderson's prerogative to enforce the subpoena if she so chooses. A copy of the same letter was mailed to Anderson and the BBO.

70.    On May 31, 2022 Talasazan sent an email with a letter attached therein to Anderson notifying Anderson that evidence had been spoliated and that she should take notice that Anderson should preserve evidence in anticipation of litigation. Talasazan and Anderson spoke over the phone shortly after Talasazan sent the said email and attachment therein to Anderson. During the phone call, Talasazan confronted Anderson with the specific instances Talasazan recalls trimmed or spoliated from the video, to which Anderson responded that she did not recall. In a follow up email thereafter, Anderson stated that, among other things, no one tampered with the video, which Talasazan responded that Anderson stated that she did not recall not that no one tampered with the evidence during the said phone discussion shortly before the email exchange. Shortly after this preceding email exchange, Anderson removed her name from her emails through and up to the present date.

71.    On or about June 30, 2022 Talasazan spoke with the Bank on a recorded phone call. He explained the reasons why and sources of authority for his position and, explained that if the bank were going to comply he will have to seek injunctive relief with a court of competent jurisdiction. The Bank representative said that the Bank will respond to Talasazan following the phone call after having time to discuss the matter with the Bank legal counsel. The Bank never responded thereafter.

72.    On June 30, 2022 Talasazan forwarded an email to Anderson where Talasazan requested secretary and assistant at the BBO to help refer him as to whom he may be able to request reasonable accommodation for the upcoming said July 7, 2022 deposition to be taken remotely on Microsoft Teams. Anderson responded to the said email denying that evidence had been tampered and asking Talasazan what he wants, to which Talasazan obtested to Anderson's said denial and asked Anderson whether reasonable accommodations would be provided for him for the said July 7 deposition or not. Talasazan did not receive any response regarding reasonable

accommodation thereafter.

73.     On July 5, 2022 Anderson sent an email to Talasazan, the subject line of which indicated "Canceled: Subpoena Mtg/Statement Under Oath re: BBO File No. 1-21-0027817" and upon opening said email there were links inviting Talasazan to attend. Attached herewith as **Exhibit 6** is a true and correct copy of Anderson's said email dated July 5, 2022. Talasazan, having no accommodation provided to him after requesting such from Anderson, and seeing Anderson's preceding email subject line indicating that it was cancelled, did not appear remotely to the virtual deposition.

74.     On September 26, 2022 the assistant who works with Anderson at the office of Bar counsel, namely Anne T Brown, emailed Talasazan the petition for discipline against Talasazan. At the time said email was sent to Talasazan it was the second day of the Jewish new year, which Talasazan observes and, at the time, Talasazan was located in Israel with his wife.

75.     In the Petition signed and dated by Anderson, the name of the client Talasazan represented in the underlying action regarding 0240 was misnomered, such that, by way of example only, the name Steven James Roe was James Roe in the body of the Petition.

76.     On October 7, 2022 Talasazan called his bank in respect to the matter so discussed on or about June 30, 2022, Talasazan was notified that the call was being recorded. Talasazan had a brief discussion with a bank representative over the phone in which he provided the identifying details used for the previous bank representative to pull the relevant records and documents regarding the matter involving Subpoena No. 2, this time however, the associate told Talasazan that no such records or documents exist.

77.     Upon information and belief, Vimeo.com, Inc. and Connected Ventures, LLC (Vimeo, Inc./ or Vimeo) is the online enabled platform that hosts remote hearings and trials for all proceedings involving Bar Counsel, BBO, and any Respondent. Vimeo, Inc. requires all users

to agree to its terms of use and privacy policy which, by using the Vimeo, Inc. website, directly

or indirectly, a person must accept to and agree all terms of use, obligations, and conditions.

## CLAIMS FOR RELIEF

### Count I (Against Defendants Microsoft, Anderson, Stewart, the Office of Bar Counsel, and the Board of Bar Overseers)
*The Remote Deposition Held Virtually and Future Proceedings To be Held Virtually Violates the Fifth Amendment and Due Process Clause of the Constitution of the United States*

78.    Talasazan repeats and incorporates paragraphs 1 through 77 as if fully set forth

herein.

79.    There is an actual and justiciable controversy in this case. The circumstances

relating to the Microsoft Teams remote deposition taken virtually as well as the facts relating to

Subpoena No. 1 and Subpoena No. 2 and all cases referenced in or in any way relating to the

Petition for Discipline which Talasazan acted as Attorney to the Client and in upholding his oath

as an Attorney thereafter to the Commonwealth of Massachusetts.

80.    Talasazan never agreed to nor does he accept the terms and conditions pertaining

to Microsoft, Bar Counsel, Anderson, Stewart or the BBO.

81.    Talasazan does not have a Vimeo, Inc. account, and has never agreed to nor

accepted the terms and conditions of Vimeo, Inc. in respect to, or concerning any legal or

adjudicatory body or tribunal, regardless if it is a judicial or quasi judicial, criminal or civil,

administrative adjudicatory body, or court of law or equity in relation to the BBO, Microsoft,

Anderson, Stewart, or Bar Counsel.

82.    At all relative times, neither the BBO nor Bar Counsel have attempted to or

provided any notice sent to or furnished to Talasazan in relation to the terms and conditions

concerning Microsoft and the remote video deposition taken virtually. To the extent Talasazan

did receive notice, if at all, or Talasazan should have known about such notice, if at all, such

20

notice in each and every event and instance occurred after the material event triggering, in fact or, by operation of law, an ex post facto application in contravention to the Constitution of the United States of America.

83.     Talasazan has a Constitutionally protected interest in his license to practice law.

84.     Under the Fifth Amendment of the United States Constitution, Talasazan has a right to assert the privilege against self incrimination. As a result of the spoliation of evidence relating to the Microsoft Teams video deposition taken virtually, Talasazan has been deprived of the said right and privilege.

85.     Under the Fifth Amendment to the United States Constitution, Talasazan has the right to be free from Uncompensated Takings of Property. As a result of the Petition for Discipline explicitly posting Talasazan discipline in respect to Talasazan in the affirmative, Defendants have taken property belonging to Talasazan unconstitutionally.

86.     Under the Fifth Amendment to the United States Constitution, Talasazan has the right to assert the privilege against self incrimination.  As a result of the spoliation of evidence relating to the Microsoft Teams video deposition taken virtually, Talasazan has been deprived of said right.

87.     Defendants Anderson, Stewart, the Office of Bar Counsel, and the Board of Bar Overseers are depriving Talasazan to, among other things, negate the existence of and forego the right to assert the privilege against self incrimination by denying the existence of what Talasazan has said and the said spoliation, thereby prospectively compounding Talasazan into a bargain to exchange the evidence of a crime, for a consideration that is against public policy and an illegal contract.

**Count II (Against Defendants Microsoft, Anderson, Stewart, the Office of Bar Counsel, and the Board of Bar Overseers)**
***The Remote Deposition Held Virtually and Future Proceedings To be Held Virtually Violates the Sixth Amendment and Due Process Clause of the***

### Constitution of the United States

88.     Talasazan repeats and incorporates paragraphs 1 through 87 as if fully set forth herein.

89.     There is an actual and justiciable controversy in this case. The circumstances relating to the Microsoft Teams remote deposition taken virtually as well as the facts relating to Subpoena No. 1 and Subpoena No. 2 and all cases referenced in or in any way relating to the Petition for Discipline which Talasazan acted as Attorney to the Client and in upholding his oath as an Attorney thereafter to the Commonwealth of Massachusetts.

90.     Talasazan never agreed to nor does he accept the terms and conditions pertaining to Microsoft, Bar Counsel, Anderson, Stewart or the BBO.

91.     Talasazan does not have a Vimeo, Inc. account, and has never agreed to nor accepted the terms and conditions of Vimeo, Inc. in respect to, or concerning any legal or adjudicatory body or tribunal, regardless if it is a judicial or quasi judicial, criminal or civil, administrative or court of law or equity.

92.     At all relative times, neither the BBO, Anderson, Stewart, nor Bar Counsel have attempted to or provided any notice sent to or furnished to Talasazan in relation to the terms and conditions concerning Microsoft and the remote video deposition taken virtually. To the extent Talasazan did receive notice, if at all, or Talasazan should have known about such notice, if at all, such notice in each and every event or instance occurred after the material event triggering in fact or by operation of law an ex post facto application that contravenes the Constitution of the United States of America.

93.     Talasazan has a Constitutionally protected interest in his license to practice law.

94.     Under the Sixth Amendment of the United States Constitution and the Due Process Clause of the Fourteenth Amendment, Talasazan has the right to an opportunity to face

22

the witness, cross examine the witness, confront the witness, and object to the testimony. As a result of the spoliation of evidence relating to the video deposition taken virtually, Talasazan has been deprived of said right.

**Count IV (Against Defendants Microsoft, Anderson, Stewart, the Office of Bar Counsel, and the Board of Bar Overseers)**
***The Remote Deposition Held Virtually and Future Proceedings To be Held Virtually Violates the Privileges and Immunities Clause of the Constitution of the United States***

95.     Talasazan repeats and incorporates paragraphs 1 through 94 as if fully set forth herein.

96.     There is an actual and justiciable controversy in this case. The circumstances relating to the Microsoft Teams remote deposition taken virtually as well as the facts relating to Subpoena No. 1 and Subpoena No. 2 and all cases referenced in or in any way relating to the Petition for Discipline which Talasazan acted as Attorney to the Client and in upholding his oath as an Attorney thereafter to the Commonwealth of Massachusetts.

97.     Talasazan never agreed to nor does he accept the terms and conditions pertaining to Microsoft, Bar Counsel, Anderson, Stewart or the BBO.

98.     Talasazan does not have a Vimeo, Inc. account, and has never agreed to nor accepted the terms and conditions of Vimeo, Inc. in respect to, or concerning any legal or adjudicatory body or tribunal, regardless if it is a judicial or quasi judicial, criminal or civil, administrative or court of law or equity.

99.     At all relative times, neither the BBO nor Bar Counsel have attempted to or provided any notice sent to or furnished to Talasazan in relation to the terms and conditions concerning Microsoft and the remote video deposition taken virtually. To the extent Talasazan did receive notice, if at all, or Talasazan should have known about such notice, if at all, such notice in each and every event or instance occurred after the material event triggering in fact or

23

by operation of law an ex post facto application that contravenes the Constitution of the United States of America.

100.     Under the Priveleges and Immunities Clause of the United States Constitution, Talasazan has the right to travel freely as a resident of the State of California. As a result of the Petition for Discipline and all cases or posted notices tangibly or virtually arising out of said Petition, Talasazan has been discriminated by Anderson, Stewart, BBO, and the Bar Counsel.

101.     As a result of Anderson, Stewart, BBO, and the Bar Counsel discrimination of Talasazan, Anderson, Stewart, BBO, and the Bar Counsel injured Talasazan.

**Count V (Emergency Injunctive Relief)**
***The Remote Deposition Held Virtually and Future Proceedings To be Held Virtually Are Unconstitutional Such That Defendant Cannot Answer the Petitioner's Petition for Discipline Unless He Parts With His Right to Enter Into a Contract Freely and Voluntarily***

102.     Talasazan repeats and incorporates paragraphs 1 through 101 as if fully set forth herein.

103.     There is an actual and justiciable controversy in this case. The circumstances relating to the Microsoft Teams remote deposition taken virtually as well as the facts relating to Subpoena No. 1 and Subpoena No. 2 and all cases referenced in or in any way relating to the Petition for Discipline which Talasazan acted as Attorney to the Client and in upholding his oath as an Attorney thereafter to the Commonwealth of Massachusetts.

104.     Talasazan never agreed to nor does he accept the terms and conditions pertaining to Microsoft, Bar Counsel, Anderson, Stewart or the BBO.

105.     Talasazan does not have a Vimeo, Inc. account, and has never agreed to nor accepted the terms and conditions of Vimeo, Inc. in respect to or concerning any legal or adjudicatory body or tribunal, regardless if it is a judicial or quasi judicial, criminal or civil, administrative or court of law or equity.

106.     Defendants Anderson, Stewart, the Office of Bar Counsel, and the Board of Bar Overseers are charged with enforcing Statutes, Rules, or Orders that violate the Sixth Amendment because the video deposition taken virtually has been spoliated and Talasazan has a right to confront those who committed a crime that he witnessed or knows occurred in the common course of the events and experience in his life.

107.     Subpoena No. 1 and Subpoena No. 2 were defective and, but for the Rules of the Board of the Bar Overseers, Talasazan has no remedy, right, or recourse to assert his rights, priveleges, and immunities such that he can Defend himself.

108.     Because Defendants are imposing on Talasazan to enter, accept and agree to the remote adjudicatory or administrative proceedings held virtually on the Vimeo, Inc. platform, Defendants are imposing obligations that impair Constitutionally protected interests and rights including the freedom of a citizen to contract freely and voluntarily with a private third party person or entity.

109.     Talasazan is not a Vimeo, Inc. user nor does Talasazan intend to sign up for a Vimeo account.

110.     Under Article I, Section 10, Clause 1 of the Constitution of the United States, no state can pass any *ex post facto* Law, or Law impairing the Obligation of Contracts.

111.     But for Anderson, Stewart, the Office of Bar Counsel, or the Board of Bar Overseers actions, policies, procedures, rules or regulations, Talasazan would be free to choose any private third party with whom and where he contracts in and with freely and voluntarily, without a government imposed, mandated or ordered term, condition, or obligation applicable before Talasazan agrees to or accepts anything, if at all.

112.     There is a greater and more potent risk to Talasazan if he must proceed with the Petition for Discipline such that he is stripped of any right to contract freely and voluntarily,

including and without limitation to the laws of the State of California.

113.    Upon information and belief, the same or similar tools available in the Microsoft Teams application like the "trim" function so available, will be used against Talasazan such that the unjustified erasure, destruction, or spoliation of matters relating to and affecting his defense and rights as a citizen of the United States and a resident of the State of California will reoccur.

114.    The fact that Talasazan is hard of hearing and disabled; that the video of the deposition has been spoliated; and that the BBO denied Talasazan's request to investigate the authenticity of the video of the deposition has injured the rights of Talasazan, and torments Talasazan psychologically.

115.    It is unconstitutional for Talasazan to have to travel to Massachusetts in order to preserve and defend his constitutionally protected interests in his license to practice law by paying out of his own pocket to travel when Talasazan has no such affirmative obligation given the circumstances relating to the Petition to Discipline Talasazan.

116.    By spoliating evidence, there is an immediate and irreparable risk of harm to Talasazan if emergency injunctive relief is denied.

117.    The risk to Anderson, Stewart, Bar Counsel, and the BBO is minimal when the truth in action will show upon proof here or later discovered and not destroyed that Anderson and Stewart have violated Talasazan's right to due process, Anderson is a complaining witness to the Petition to discipline, the tools available to Defendants on Microsoft Teams and Vimeo, Inc. can be applied to further violate Talasazan's constitutional rights, and that Talasazan is stripped of his ability to defend himself to a greater degree than the injury and damage Talasazan has already incurred among other things because he is deaf in his left ear.

118.    Talasazan has sent relevant requests to preserve evidence such that the evidence

26

should relate and corroborate the allegations.

119.     The public will be more outraged if the administration of justice, as this complaint makes out, is not corrected by court order than the states interest .

120.     The Microsoft Teams application in Agreement 5348 which Anderson and Stewart are licensed and subscribed to, and use under Agreement 5438 triggers by operation of law t, Anderson is an interested witness which is the role of a witness not the attorney; Talasazan is being talked to and not dealt with; access to the court is restricted by virtue of the fact that Talasazan is deaf in his left ear and hard of hearing; procedural due process is obviated where, as here, rights reserved and objections made are subject to and excludable by Anderson or Stewart.

## Count VI (Violation of Title III of the Americans with Disabilities Act))

121.     Talasazan repeats and incorporates paragraphs 1 through 120 as if fully set forth herein.

122.     Title II of the Americans with Disabilities Act of 1990 (ADA), which provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs or activities of a public entity," 42 U. S. C. §12132.

123.     At all times mentioned herein, Talasazan was a qualified individual with a disability under the ADA.

124.     By reason of Talasazan's Disability, Defendants Anderson, Stewart, BBO, Bar Counsel, and Microsoft excluded from participation or denied the benefits of the services, programs or activities of a public entity to Talasazan when the video deposition was spoliated, when Subpoena No. 1 was sent or when Subpoena No. 2 was sent.

125.     Talasazan requested reasonable accomodations and was denied.

126.     Through the conduct described above, Microsoft, Anderson, Stewart, BBO, and Bar Counsel, and each of them, have discriminated against Plaintiff on the basis of a disability, by denying him access to the Courts.

### Count VII (Violation of the Right to Financial Privacy Act under Article III, Section 2 of the United States Constitution)

127.     Talasazan repeats and incorporates paragraphs 1 through 107 as if fully set forth herein.

128.     Talasazan had a right to be free from Anderson or Stewart spoliating evidence.

129.     Upon information and belief, Anderson and Stewart used the Trim function to spoliate the video deposition prejudicially against Talasazan.

130.     But for Anderson and Stewart spoliating the deposition testimony Talasazan's constitutional rights would not have been violated.

131.     Microsoft, its agents officers, employees, and executives by and through the Teams application for Anderson and Stewart so using the Teams applications to gather testimony, materially impairs the contractual relation by and between Talasazan and his bank.

132.     But for Anderson and Stewart spoliating the deposition video and submitting an opposition to the Motion to Quash on such a basis, Talasazan would not have to part with the assertion of his rights, privileges and immunities protected by the United States Constitution by fraud.

133.     But for Anderson issuing a subpoena that identified a fictitious address in the State of Massachusetts and not in California, process of the subpoena would have been proper.

///

///

///

///

134.     But for the proper service Anderson and Stewart did not make properly, Talasazan's rights as a citizen of the United States and a resident of the State of California would not have been impaired.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully seeks the following relief:

1.     Emergency injunctive relief enjoining Anderson, Stewart, Bar Counsel, and the BBO from proceeding with the Petition for Discipline against Talasazan.

2.     Nominal damages;

3.     An order awarding Talasazan costs and fees; and

4.     Any and all other such relief as the Court may deem appropriate.


Date: October 14, 2022

**DECLARATION OF HAREL TALASAZAN**

**Harel Talasazan**
**Pro Se**

520 N KINGS ROAD APT 305
WEST HOLLYWOOD, CA 90048
HARELTALA @ GMAIL.COM
(310) 854 4232

I, Harel Talasazan, on oath depose and state as follows:
1.     I am the Plaintiff in the above-entitled matter.  The facts stated herein are based upon my own personal knowledge and information, and if called as a witness I would testify competently thereto.

Signed and subscribed to under the penalties of perjury this _14_ day of OCTOBER, 2022.

**Harel Talasazan**
**Pro Se**

29