**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HAREL TALASAZAN,<br> Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, OFFICE OF BAR COUNSEL; BOARD OF BAR OVERSEERS, DOROTHY ANDERSON; MATTHEW STEWART; AND DOES 1-25,<br><br> Defendants. | Civil Action No. 1:22-cv-11764-DJC |

<u>**DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM IN SUPPORT Of ITS FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR ITS FAILURE TO STATE A CLAIM**</u>

**I.      INTRODUCTION**

Through his First Amended Complaint for Injunctive Relief (the "FAC"), Plaintiff, Harel Talasazan ("Plaintiff"), describes over a dozen instances of alleged misconduct perpetrated by named defendants other than Microsoft Corporation ("Microsoft"). There are no allegations that directly implicate Microsoft in any conduct that allegedly harmed the Plaintiff, however. Microsoft appears to have been named as a defendant simply because its technology was used during the remote legal proceedings that form the basis of Plaintiffs' claims. Because the allegations of the FAC do not amount to any cause of action against Microsoft, the claims against Microsoft should be dismissed with prejudice.

The other named defendants are individuals and entities affiliated with the Commonwealth of Massachusetts – the Office of Bar Counsel and the Board of Bar Overseers, Dorothy Anderson, and Matthew Stewart (collectively, the "Other Defendants"). This alleged

1

misconduct relates to Other Defendants' investigations and proceedings, and the alleged improprieties include evidence of tampering, civil rights violations, and spoliation of evidence. Against this backdrop, Plaintiff ultimately asserts that *all* Defendants have violated a number of provisions of the United States Constitution (the "Constitution"), have committed a breach of contract, have violated Title II of the Americans with Disabilities Act of 1990 ("Title II of the ADA"), and also have done something to implicate the doctrines of equitable subrogation and equitable contribution.

Although Plaintiff brings each one of his eight claims against *every* named Defendant (together, the "Defendants"), Plaintiff does not allege that Microsoft was ever directly involved with any of the key events or behavior at issue. According to the FAC, Microsoft's only connection to the alleged malfeasance committed by the Other Defendants is that they perpetrated some of it while using Microsoft Teams. As such, Plaintiff's allegations provide absolutely no plausible basis to believe that Microsoft might be liable for anything at all.

Furthermore, the threshold problem that permeates the FAC is that Plaintiff's legal theories and alleged facts underlying almost every claim are ambiguous to the point of being incomprehensible. And, in addition to that overarching flaw, the supporting allegations, themselves, are wholly inadequate to state the asserted claims – at least insofar as they concern Microsoft.

For instance, Plaintiff alleges that all Defendants violated his Constitutional Due Process rights, as well as his rights under the Fifth Amendment, the Sixth Amendment, and the Fourteenth Amendment. However, as previously mentioned, Microsoft is not at all implicated by any of the facts that underlie these claims; and, in any event, the Constitution does not protect individuals from conduct by private corporations like Microsoft. Plaintiff also asserts a breach of

contract claim against every Defendant, despite his own express acknowledgment that he did not enter into any agreement with Microsoft. Plaintiff's claim under Title II of the ADA against Microsoft fails because Microsoft is not the sort of entity that could plausibly be liable under Title II of the ADA, and also (separately) because Plaintiff's alleged disabilities do not qualify. Plaintiff lastly brings claims for equitable contribution (Count VII), which is typically applied only in the context of insurance disputes, and equitable subrogation (Count VIII), which is typically applied only in the context of mortgage disputes. Neither of these doctrines' elements are even plausibly fulfilled by the allegations in the FAC, especially with respect to Microsoft.

Finally, it warrants mention that Plaintiff does not – at any point – allege that Microsoft was somehow complicit in the Other Defendants' misconduct by way of conspiracy or other deceptive behavior. However, if Plaintiff were trying to assert such a theory of liability against Microsoft, the factual allegations in the FAC would not suffice to do so. They do not come remotely close to meeting the requisite heightened pleading standard of Fed. R. Civ. P. 9(b) because they do not put forth any time, place, manner, means, basis for the requisite knowledge, or any other factual allegation that would be required to support this type of theory.

Thus, for the reasons further detailed herein, all of Plaintiff's claims against Microsoft should be dismissed with prejudice.

## II.     LEGAL STANDARD

"[T]he principal function" of a complaint's allegations "is to give the adverse party fair notice of the claim asserted." Srikanth Sreedhar v. Google LLC, No. 22-10322-RGS, 2022 U.S. Dist. LEXIS 87473, at *8 (D. Mass. May 16, 2022) (quotes and citation omitted). To survive a motion to dismiss, a complaint must put forth factual allegations from which the court can reasonably infer that the defendant is plausibly liable for the misconduct alleged. See Gaetani v.

Hadley, No. 14-30057-MGM, 2015 U.S. Dist. LEXIS 1952, at *2, 2015 WL 113900, at *1 (D. Mass. Jan. 8, 2015) (citing Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)). As such, "conclusory legal" assertions "are not credited." Semmami v. UG2 LLC, No. 18-cv-12396-DJC, 2019 U.S. Dist. LEXIS 87617, at *2, 2019 WL 2249705, at *1 (D. Mass. May 24, 2019) (citing García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)). It is not enough for a plaintiff's claims to be "merely conceivable." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010). The allegations must actually state a "*plausible . . . case for relief,*" see Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (emphasis in original), which "requires the reviewing court to draw on its judicial experience and common sense." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quotes and citation omitted).

## III.     PLAINTIFF'S ALLEGATIONS AND CLAIMS PERTAINING TO MICROSOFT

At its core, the above-captioned case is an action against Defendants for "[C]onstitutional violations relating to remote depositions taken virtually and proceedings against [Plaintiff]." FAC ¶ 1. The vast majority of the allegations in the FAC accuse the Other Defendants of misconduct that occurred during several investigations and/or proceedings (together, the "Proceedings") that were conducted by the Commonwealth of Massachusetts's Board of Bar Overseers (the "BBO") or the Commonwealth of Massachusetts's Office of Bar Counsel (the "OBC"). And, Plaintiff's claims primarily focus on Defendants' supposed violations of the Constitution of the United States of America (the "Constitution"). See FAC ¶ 102-168. As Plaintiff acknowledges, unlike the Other Defendants, Microsoft is neither a state actor nor an individual working for the state. See FAC ¶ 3 (referencing "Microsoft Corporation," and noting Microsoft is "incorporated"). For this reason, Microsoft is not even allegedly involved in the vast majority of the events at issue in the FAC – because Microsoft did not conduct any of the

Proceedings at the heart of the allegations in the FAC. As such, Microsoft's synopsis of Plaintiff's FAC focuses primarily on the allegations and claims against Microsoft, specifically. For a more fulsome summary of the FAC that details all of the allegations in the FAC relating to the Proceedings at issue, Microsoft would direct this Court's attention to the summary of alleged facts from the forthcoming memorandum supporting the Other Defendants' motion to dismiss.

To begin, after the FAC describes the parties, notes some jurisdictional points, and provides some background about Plaintiff and his law practice (FAC ¶¶ 1-22), it proceeds to describe circumstances under which some subset of the Other Defendants took Plaintiff's sworn virtual deposition in the context of an ongoing investigation for professional misconduct (the "First Proceeding"). See FAC ¶¶ 23-27. The First Proceeding related to an alleged "fraudulent transfer of loans, real estate mortgages, and securities" (FAC ¶ 30), but it was never "tried or argued or . . . heard before a Justice of the Supreme Judicial Court" (FAC ¶ 34). The extent to which Plaintiff may have been an actual or potential target in the First Proceeding is not clear from the FAC's allegations. See FAC ¶¶ 23-27.

Subsequently, some subset of the Other Defendants began another proceeding or investigation (the "Second Proceeding") in which they accused Plaintiff of "(1) violating the rules of professional conduct by filing a complaint with the Court which lacked a sufficient non-frivolous basis, (2) being disruptive in a courtroom," and also alleging that Plaintiff "is [too] mentally or physically impaired to practice law." FAC ¶ 35. Plaintiff puts forth a number of factual details relating to the Second Proceeding, many of which suggest that some or all of the Other Defendants engaged in various sorts of misconduct. FAC ¶¶ 36-43. In this discussion of events relating to the Second Proceeding, Plaintiff also alleges that his computer was hacked, spyware was installed on his phone, that he was threatened "by people unknown to him," and

that there had been "an attempt to harm [him]." FAC ¶ 42. However, Plaintiff clarifies that the devices and/or software involved were produced by Apple, Inc., and he also notes that he had "reported" these issues "to Apple, Inc." Id. As such, although these particular allegations pertain to computer software and/or hardware, it is clear that they do not involve Microsoft. See id.

Plaintiff then alleges that the Commonwealth of Massachusetts (the "Commonwealth") entered into a software services contract with Microsoft "[o]n or about June 28, 2019" (the "Agreement"). See FAC ¶ 44. Plaintiff includes an excerpt of this Agreement in ¶ 44 of his FAC, and he has also appended the entire Agreement to his FAC as Exhibit 3 thereto. See id.

Plaintiff believes that the two individual Other Defendants, Dorothy Anderson and Matthew Stewart, were "licensed user[s] of, used, and benefited from" the Agreement – since they used certain Microsoft products and services, including the "Microsoft Teams application," to conduct the depositions in the Proceedings. See FAC ¶¶ 45-47. And, according to Plaintiff, some subset of the Other Defendants did not "furnish reasonable accommodation to [him]" in connection with any of the depositions at issue, nor did any of the Other Defendants ask him "if he needed reasonable accommodation before taking or conducting" his virtual deposition in connection with the First Proceeding. See FAC ¶ 45. Notably, Plaintiff expressly states that he did not "agree[ ] to any terms or conditions" in connection with his virtual deposition – neither with Microsoft, nor with any other government or private entity.[1] See FAC ¶ 46. Plaintiff then provides additional details about that which occurred during, and then after, his virtual deposition that pertained to both the First and Second Proceedings. FAC ¶¶ 50-56.

---

[1] Consistent with the allegations in the FAC (FAC ¶ 46), under the circumstances Plaintiff describes relating to his use of the Microsoft Teams application, he probably *would not* have entered into Microsoft's User Services Agreement. See Affidavit of Paul B. Lewis, Esq. ¶ 2; see also Exhibit A to Affidavit of Paul B. Lewis, Esq., Microsoft Services Agreement last updated August 15, 2022.

Next, Plaintiff describes yet another investigation or proceeding conducted by the Other Defendants (the "Third Proceeding"), which he characterizes as "the primary case related to" his status as an "Attorney." See FAC ¶¶ 57-59. Therein, he accuses the Other Defendants of a number of additional improprieties and other misconduct. See id. In particular, Plaintiff believes that some portion of his prior recorded virtual deposition was "spoliated" and/or "tampered with" by some subset of the Other Defendants. FAC ¶ 82. However, his allegations do not implicate Microsoft in such activity in any way, nor do they even suggest at any of the evidence at issue was in Microsoft's custody and control at the time of the supposed tampering. On May 31, 2022, Plaintiff sent a letter to the Other Defendants accusing them of this, and he communicated with a subset of the Other Defendants on the same topic in the days that followed. See id. During that ensuing correspondence, at least one Other Defendant denied this accusation.[2] See id.

On June 13, 2022, a subset of the Other Defendants again "invited" Plaintiff "to participate [in] a remote deposition to be taken virtually on Microsoft Teams," – this time relating to the Third Proceeding. FAC ¶ 80. Plaintiff "objected" to this invitation. See id. On June 30, 2022, Plaintiff sought assistance from some of the Other Defendants in an effort to secure "reasonable accommodation for the . . . July 7, 2022 deposition to be taken remotely on Microsoft Teams." FAC ¶ 84. However, he did not ultimately receive any substantive assistance in that respect. Id. Notably, Plaintiff does not allege that he ever contacted Microsoft, nor any of Microsoft's agents and/or representatives, about the "reasonable assistance" that he apparently sought in connection with *any* of the three Proceedings at issue. See id. Plaintiff did not ultimately attend the scheduled July 2022 deposition that related to the Third Proceeding. FAC

---

[2] Plaintiff also describes a correspondence with an unnamed bank in late June of 2022, presumably relating to evidence in one of the three Proceedings; however, he has not brought suit against the bank. See FAC ¶ 83.

¶ 85. Additional details regarding subsequent developments pertaining to the Third Proceeding are then provided in the paragraphs that follow. See FAC ¶¶ 85-89.[3]

Next, in a FAC section that is titled "[Plaintiff's] Due Diligence," Plaintiff details additional alleged communications with certain individuals and Other Defendants that relate to the three Proceedings. FAC ¶¶ 90-99. In this section, Plaintiff also articulates certain "belief[s]" and "suspic[ions]" that he holds about certain related and unrelated occurrences, including an allegation that "the video recording of one of the depositions in either the First or Second Proceeding had been "trimmed or altered" (FAC ¶ 93), that "the Lieutenant Governor of Massachusetts traveled to Los Angeles . . . to initiate . . . surveillance" of him (FAC ¶¶ 96, 97), that there have been "efforts to thwart or prevent him from bringing this claim" by the Other Defendants (FAC ¶ 94), and that the resources that he uses to "access reliable authorities to cite in . . . this case have been . . . materially changed or removed" (FAC ¶ 98). Plaintiff's only reference to Microsoft contained in this "Due Diligence" section of the FAC is a note that "Microsoft received" Plaintiff's "demand to preserve evidence," to which Microsoft "responded" by "stat[ing] that" it would "preserve evidence in relation" to some of the Other Defendants per Plaintiff's request.[4] See FAC ¶ 93.

Plaintiff then asserts eight "Claims for Relief," each of which incorporate the preceding allegations. See FAC ¶¶ 102-168. Notably, however, Plaintiff does not identify any specific Defendants against which each respective claim is made. See id. Instead, Plaintiff appears to bring every one of his claims against *all* Defendants.

---

[3] Plaintiff also mentions several other entities in paragraphs 85-89, including Vimeo.com, Inc., Connected Ventures, LLC, and an unnamed bank; however, these entities are not named as Defendants in the FAC. See FAC ¶¶ 85-89.

[4] Plaintiff also notes that Citrix has informed him that it would preserve evidence in relation to the Other Defendants. See FAC ¶ 93.

- Count I is a claim that, at least insofar as they impacted Plaintiff, the Rules of Adjudicatory Proceedings governing the three Proceedings constitute violations of "Article Four of the Constitution of the United States and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States" – because Plaintiff has a "constitutionally protected property interest" in his law license and the Defendants have effectively prevented him from collecting a judgment of $23,421.04. See FAC ¶¶ 102-113; FAC at page 28-29.

- Count II claims that the procedure surrounding the virtual depositions at issue "violate[d] the Sixth Amendment and Due Process Clause of the Constitution of the United States" – which is grounded in an assertion that Defendants have filed "fatally defective subpoenas," have "conceal[ed] and carr[ied] on a crime," and have "spoliat[ed] evidence." See FAC ¶¶ 114-118; FAC at page 29-30.

- Count III asserts that Defendants' conduct "Violate[s] the Fifth Amendment of the Constitution of the United States" because Plaintiff's "collecti[on]" of the previously-mentioned judgment "would compound" [sic] him "in a crime." See FAC ¶¶ 119-124; FAC at page 30-31.

- Count IV, which seeks "Emergency Injunctive Relief," asserts that the remote deposition sought by the Other Defendants is unconstitutional because it deprives him of his Due Process rights and violates the "Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."[5] See FAC ¶¶ 125-144; FAC at page 31-34.

---

[5] As additional support for Count IV, Plaintiff also references the "rules and procedures related to IOLTA" several times. See FAC ¶¶ 130, 133, 134, 137.

- Count V is a claim that Plaintiff suffered "harm" because the Defendants violated "Title II of the Americans with Disabilities Act of 1990" by "exclud[ing]" him from "participate[ng] in an adjudicatory proceeding" that was an "activit[y] of a public entity." See FAC ¶¶ 145-152; FAC at page 34-35.

- As to Count VI, Plaintiff asserts that the BBO breached its contract with him through conduct such as: spoliating evidence (FAC ¶ 155), subpoenaing a financial institution without a legitimate purpose (FAC ¶¶ 156, 157), failing to comply with the rules of civil procedure or the standing orders of the Supreme Judicial Court (FAC ¶¶ 158-161), violating his "right to financial privacy" (FAC ¶¶ 162-163), and by "with[olding]" his "ability to obtain evidence" (FAC ¶¶ 158-163). See FAC at page 35-36.[6]

- Count VIII claims that Plaintiff "has a right of equitable contribution with respect to all costs he has" incurred because he "was never able to" appear as the attorney of record for certain cases.[7] See FAC ¶¶ 164-166; FAC at page 36-37.

- Count VIII is a claim for "Equitable Subrogation," which asserts that Defendants owe "each and every one of [Plaintiff's] clients when he was representing each and every one of them" due to their conduct, and also that Plaintiff is entitled to "costs he has paid and will pay" as a result of this case.[8] See FAC ¶¶ 167-168; FAC at page 37-38.

---

[6] In the heading to Count VI, Plaintiff asserts that "12 USCS § 3401 et seq. under § 1988 and Article III, Section 2 of the United States Constitution" were violated. See FAC at page 35.

[7] In the heading to Count VII, Plaintiff asserts that "§ 1988 and Article III, Section 2 of the United States Constitution" were violated. See FAC at page 36.

[8] In the heading to Count VIII, Plaintiff asserts that "§ 1988 and Article III, Section 2 of the United States Constitution" were violated. See FAC at page 37.

Finally, Plaintiff seeks relief including: "[e]mergency injunctive relief enjoining the Petition for Discipline," an order that he be held harmless for any events relating to this case, nominal damages, costs and fees, and any other relief deemed appropriate. See FAC at page 38.

## IV.   ARGUMENT

### A.    Plaintiff has not stated a claim against Microsoft for any Constitutional violation.

As Plaintiff explains, the thrust of his case is an action against the Defendants for "Constitutional violations relating to remote depositions taken virtually and proceedings." See FAC ¶ 1. Indeed, Counts I, II, III, and IV allege that Defendants violated Plaintiff's Constitutional rights; and, at least through their respective headings, Counts VI, VII, and VIII also reference the Constitution in some form. However, Microsoft cannot be held liable for these alleged Constitutional violations because it is a private entity. See FAC ¶ 3 (noting that Microsoft is a corporation). As such, to the extent that Plaintiff brings any claims against Microsoft for supposed violations of the Constitution, those claims should be dismissed.

To be clear, "[t]he Constitution structures the National Government, confines its actions, and, in regard to certain individual liberties and other specified matters, confines the actions of the States." Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619, 111 S. Ct. 2077, 2082 (1991). Accordingly, "[t]he Constitution's protections . . . apply in general only to action by the government." Id. Therefore, its "guarantees" typically "do not apply to the actions of private entities."[9] See id.; see also Nat'l Collegiate Ath. Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S. Ct. 454, 461 (1988) (the protections of the Fourteenth Amendment do not extend to "private conduct abridging individual rights" (quoting Burton v. Wilmington Parking Authority, 365 U.S.

---

[9] There are, however, a "few exceptions" to this tenet, such as the Thirteenth Amendment. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619, 111 S. Ct. 2077, 2082 (1991). However, none of these exceptions apply to the circumstances and events alleged here.

715, 722 (1961)). Consequently, even where a private actor's action may be objectively "unfair" to the aggrieved individual, the Constitution "affords no shield" against it. See Nat'l Collegiate Ath. Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S. Ct. 454, 461 (1988); accord, e.g., Gambino v. Alfonso, No. 10-10860-PBS, 2012 U.S. Dist. LEXIS 165605, at *10 (D. Mass. Nov. 20, 2012) ("due process protections do not extend to private conduct abridging individual rights" (internal quotes and citation omitted)). Thus, since Microsoft is a private entity (FAC ¶ 3), it cannot be liable for the alleged Constitutional violations. They should be dismissed.

**B.** **Plaintiff has not stated a claim against Microsoft for a breach of contract.**

To state a "a breach-of-contract claim," a plaintiff "must show," *inter alia*, that "there was an agreement between him and [the defendant]." Guldseth v. Family Med. Assocs. LLC, 45 F.4th 526, 534 (1st Cir. 2022). Thus, to the extent that Plaintiff may be trying to assert a breach of contract against Microsoft (Count VI), it must be dismissed because Plaintiff has not identified any enforceable agreement to which he and Microsoft are both parties.

Although Plaintiff includes an excerpt from the Agreement between Microsoft and the Commonwealth of Massachusetts in his FAC (FAC ¶ 44), he does not allege that he is a party to that contract or that he was a third-party beneficiary of it.[10] See FAC ¶¶ 44-46. In fact, Plaintiff expressly states that he did not "agree[ ] to any terms or conditions" with Microsoft, in connection with the virtual deposition at issue. See FAC ¶ 46. Furthermore, in his allegations supporting the only claim accusing any Defendant of a contractual breach (Count VI), Plaintiff

---

[10] And, as a matter of law, Plaintiff cannot be a third-party beneficiary of the Agreement under the allegations in the FAC because Plaintiff is not a "donee beneficiary" or a "creditor beneficiary." See Moosehead Sanitary Dist. v. S. G. Phillips Corp., 610 F.2d 49, 52-53 (1st Cir. 1979) ("a person who is not a party to a contract is entitled to sue on the contract only if such person is a donee beneficiary or a creditor beneficiary" (internal citations omitted)).

states only that he has furnished consideration upon the Massachusetts Board of Bar overseers in exchange for certain services; he does not mention Microsoft. See FAC ¶¶ 153-163.

Finally, even if Plaintiff had alleged that he had entered into Microsoft's User Services Agreement,[11] this case still could not proceed because Microsoft's User Services Agreement compels arbitration.[12] See Exhibit A to Affidavit of Paul B. Lewis, Esq.,[13] Microsoft Services Agreement last updated August 15, 2022, at 14 (if Microsoft and the user are unable to solve a dispute "informally," they "agree to binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court"); see also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (courts may review agreements between the parties during adjudication of motions to dismiss). Indeed, "[t]he Federal Arbitration Act (FAA) requires a federal court in which suit has been brought upon any issue referable to arbitration under an agreement in writing for such arbitration to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 52 (1st Cir. 2002) (quotes and citation omitted).

**C.     Plaintiff has not stated a claim against Microsoft under "Title II of the Americans with Disabilities Act of 1990."**

Plaintiff's claim (Count V) that Microsoft violated "Title II of the Americans with Disability Act of 1990, codified at 42 U.S.C. § 12132" ("Title II of the ADA") by denying

---

[11] Consistent with his allegations on the subject, Microsoft confirms that Plaintiff would not have entered into Microsoft's User Services Agreement as a matter of fact. See Affidavit of Paul B. Lewis, Esq. ¶ 2.

[12] When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document . . . that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998).

[13] Exhibit A to the Affidavit of Paul B. Lewis, Esq. is a true and correct copy of the Microsoft User Services Agreement that was last updated August 15, 2022, with the exception of the fact that page numbers have been added for ease of reference. See Lewis Affidavit ¶ 3.

Plaintiff "the benefits of the services, programs or activities of a public entity" (FAC ¶ 150) also fails for several different reasons.

To state a claim under Title II of the ADA, a plaintiff must allege that (1) he is a "qualified individual with a disability," (2) he was either excluded from participation in, or denied the benefits of, a public entity's "services, programs or activities" or was otherwise discriminated against, and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability. See Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000). To qualify as a public entity susceptible to suit under the statute, the defendant must be "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State or States or local government," or "the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131. However, Microsoft does not fall into any of these statutorily-defined categories because it is a corporation. See FAC ¶ 3 (referencing "Microsoft Corporation," and noting that Microsoft is "incorporated"). Therefore, Microsoft cannot be liable under Title II of the ADA.

Plaintiff's claim under the Title II of the ADA also fails because his alleged impairments do not qualify as a disability under the statute.[14] See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) (plaintiff must establish qualifying disability to state a claim). In his FAC, Plaintiff alleges that he is "deaf in his left ear" and that he experiences "tinnitus in his left ear" (FAC ¶ 16), but these problems are not covered by the statute. See, e.g, Santiago Clemente v.

---

[14] A disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); see also Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). And a "physical or mental impairment" means "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems," such as the respiratory or immune systems. 28 C.F.R. § 35.108(b)(1)(i).

Exec. Airlines, Inc., 213 F.3d 25, 31 (1st Cir. 2000) (concluding that, even assuming that it was long-term, there was no evidence that "diminution in her right-ear hearing had a severe impact on [flight attendant's] functional ability to hear"); McGeshick v. Principi, 357 F.3d 1146, 1148 (10th Cir. 2004) (holding an employee with active Meniere's disease undergoing treatment for "hearing loss, ringing in the ears (tinnitus), and vertigo" was not disabled under the ADA); Mengel v. Reading Eagle Co., No. CIV.A. 11-6151, 2013 WL 1285477, at *4 (E.D. Pa. Mar. 29, 2013) (holding that hearing loss in one ear was not a disability under the ADA). Plaintiff's claim that he experiences "sudden onsets of vertigo" (FAC ¶ 16) similarly does not suffice under Title II of the ADA. See Kimble v. Potter, 390 F. App'x 601, 603 (7th Cir. 2010) (finding an individual's "dizzy spells" and "vertigo" did not support a finding that she was "substantially limited in a major life activity" under the ADA).[15]

Furthermore, the (alleged) fact that the Other Defendants were using Microsoft's software to perpetrate some sort of discrimination – or, for that matter, any other potentially actionable conduct – does not also render Microsoft liable for that behavior. For instance, where a defendant software company sold "software that is inaccessible to blind users" to the Commonwealth of Massachusetts, which the Commonwealth of Massachusetts then allegedly used to perpetrate discriminatory practices, the software company could not be held liable for such discrimination "simply" because it "sold and licensed . . . software" that was used by the Commonwealth. See Nat'l Fed'n of the Blind, Inc. v. Epic Sys. Corp., No. 18-12630-RWZ, 2020 U.S. Dist. LEXIS 19858, at *5 (D. Mass. Jan. 31, 2020).

---

[15] Plaintiff also does not allege that he ever put Microsoft on notice of this issue or that he sought any reasonable accommodation from Microsoft; he only alleges that he sought "reasonable accommodation for the . . . July 7, 2022 deposition" from the Other Defendants. See FAC ¶ 84.

More broadly, the Communications Decency Act of 1996 protects interactive computer service companies from liability for potentially actionable third-party conduct that is perpetrated through their platforms or software – such as defamation, securities fraud, and cyberstalking. See 47 U.S.C. § 230; see, e.g., Monsarrat v. Newman, 28 F.4th 314, 320 (1st Cir. 2022) (concluding that online forum moderator was not responsible for a third party's allegedly defamatory posts), Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016) (concluding federal sex trafficking claims against online classified advertising company were barred by Section 230); Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007) (holding internet message board operator was immune from liability for cyberstalking and securities fraud claims). The statutory "immunity" conferred by this law "should be broadly construed," Lycos, 478 F.3d at 419, and it has indeed been applied by other jurisdictions to online video conferencing platforms like Microsoft Teams in recent years. See, e.g., In re Zoom Video Commc'ns Inc. Priv. Litig., 525 F. Supp. 3d 1017, 1030 (N.D. Cal. 2021); A.M. v. Omegle.com LLC, No. 3:21-CV-01674-MO, 2023 WL 1470269, at *5 (D. Or. Feb. 2, 2023).

For all of these reasons, any of which suffices on its own, Plaintiff's Title II of the ADA claim against Microsoft should be dismissed.

**D.      Plaintiff has not stated a claim for "Equitable Contribution" (Count VI) or for "Equitable Subrogation" (Count VII) under "§ 1988 and article III, Section 2 of the United States Constitution."**

As previously discussed, Microsoft cannot be held liable for the alleged violations of the Constitution because it is a private entity. Beyond that, it is difficult to see how any conceivable claim by Plaintiff (whether adequately alleged or not) could arise out of "Article III, Section 2 of the United States Constitution" – which governs the justiciability of controversies. See U.S. Const. art. III, § 2. Similarly, Plaintiff's reference to "[42 U.S.C.] § 1988" – a law that authorizes courts to award attorneys' fees in civil rights actions arising under a specifically identified subset

of statutes – is not applicable because Plaintiff has not brought suit under any of the qualifying federal statutes. See 42 U.S.C.S. § 1988(b) (expressly identifying qualifying civil rights statutes).[16]

Plaintiff's purpose behind his "Equitable Contribution" and "Equitable Subrogation" claims is unclear; he may be attempting to secure compensation for "every one of [his former clients]" who the Other Defendants' actions allegedly prevented him from "representing" (FAC ¶¶ 164-168), or he may simply be seeking his own attorneys' fees incurred in bringing and prosecuting this action (FAC ¶ 169), or both. Regardless, the incomprehensibly opaque manner in which Counts VI and VII (in particular) are pled warrants dismissal in and of itself – because it is impossible for any of the Defendants to fully ascertain the alleged factual or legal basis for these claims from the FAC. See generally Srikanth Sreedhar v. Google LLC, No. 22-10322-RGS, 2022 U.S. Dist. LEXIS 87473, at *8 (D. Mass. May 16, 2022) ("the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted." (quotes and citation omitted)).

Furthermore, the doctrine of "Equitable Contribution" (Count VI) is typically applied in insurance disputes, and its availability to an aggrieved party is "based upon equitable principles

---

[16] Title 42 U.S.C. § 1988(b), provides:

> (b) Attorney's fees. In any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 USCS §§ 1981-1983, 1985, 1986], title IX of Public Law 92-318 [20 USCS §§ 1681 et seq.], the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964 [42 USCS §§ 2000d et seq.], or section 40302 of the Violence Against Women Act of 1994, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity[,] such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

that imply a contract between the parties to contribute ratably toward the discharge of a common obligation." Ins. Co. of Pa. v. Great N. Ins. Co., 787 F.3d 632, 636 (1st Cir. 2015) (quotes and citation omitted). More specifically, "[e]quitable contribution is the right to recover from a co-obligor who shares such liability with the party seeking contribution." Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 49 (1st Cir. 2003) (ellipses, quotes, and citation omitted). However, Plaintiff has not plausibly alleged any liability on the part of Microsoft – neither to himself, nor to any other individuals or entities including his former clients. Ultimately, if liability under the alleged facts plausibly lies with *any* party, it is with the Other Defendants or some subset thereof – *only*. Therefore, notwithstanding the other problems with Plaintiff's attempt to apply the "equitable contribution" doctrine, here, this theory cannot plausibly apply to Microsoft.

Moreover, the doctrine of "equitable subrogation" (Count VII) is an "equitable remedy that has the primary purpose of preventing unjust enrichment," and which is typically applied in mortgage disputes. See Katsenes v. United States Bank Tr., N.A., Civil Action No. 19-cv-12112-DJC, 2023 U.S. Dist. LEXIS 7443, at *16 (D. Mass. Jan. 17, 2023) (citing E. Bos. Sav. Bank v. Ogan, 428 Mass. 327, 328-29, 701 N.E.2d 331 (1998)). The doctrine is implicated "where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense for its payment." Penney v. Deutsche Bank Nat'l Tr. Co., Civil Action No. 16-cv-10482-ADB, 2018 U.S. Dist. LEXIS 128612, at *18 (D. Mass. July 31, 2018) (quotes and citation omitted). In determining whether it applies, the U.S. District Court for the District of Massachusetts looks to whether: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire

encumbrance," and lastly whether "(5) subrogation would not work any injustice to the rights of the junior lienholder." <u>Katsenes v. United States Bank Tr., N.A.</u>, Civil Action No. 19-cv-12112-DJC, 2023 U.S. Dist. LEXIS 7443, at *17 (D. Mass. Jan. 17, 2023) (quoting <u>E. Bos. Sav. Bank v. Ogan</u>, 428 Mass. 327, 328-29, 701 N.E.2d 331 (1998)). Here, no outstanding debt allegedly exists (or existed), no payment has allegedly been made, and Plaintiff has not alleged the current or prior existence of any outstanding obligation on the part of any named Defendant – especially not Microsoft. Therefore, at least with respect to Microsoft, Plaintiff has failed to state a claim for "equitable subrogation."

**E.      If plaintiff is trying to assert that Microsoft was complicit in the Other Defendants' alleged misconduct, such a theory has not been adequately pled.**

Plaintiff has alleged that Microsoft's software services were utilized by the Other Defendants to perpetrate the many supposed Constitutional violations, that certain key Microsoft Teams recordings were "trimmed or altered" (FAC ¶ 93), that evidence was "spoliated" or "tampered with" (FAC ¶ 82), and that unspecified "crime[s]" were committed (FAC ¶ 115). However, he does not ever allege that Microsoft conspired with, or in any way assisted, the Other Defendants with this alleged misconduct; he does not even allege that Microsoft had custody or control of the recordings at issue, at any point. Consequently, he should not be permitted to proceed with such a theory going forward. <u>See</u> <u>N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.</u>, 537 F.3d 35, 57 (1st Cir. 2008) ("The district court would have acted well within its discretion in declining to permit advancement of the new theory" that was "first produced in response to a motion to dismiss.").

Moreover, even if the FAC had expressly theorized that Microsoft was somehow complicit in any of this activity, Plaintiff's claims against Microsoft would still fail because the underlying allegations do not meet the "the particularity requirements" of Fed. R. Civ. P. 9(b) –

the heightened pleading requirement that governs such claims at this juncture. See Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) ("in actions alleging conspiracy to defraud . . . the particularity requirements of Rule 9(b) must be met"). Indeed, if a Plaintiff wishes to assert that a defendant conspired with co-defendants or otherwise engaged in fraudulent or deceptive conduct, "Fed. R. Civ. P. 9(b) requires that defendants 'receive specification of the time, place, and content of the alleged conspiracy.'" Tomaselli v. Beaulieu, No. 08-10666-PBS, 2010 U.S. Dist. LEXIS 42611, at *33 (D. Mass. Mar. 10, 2010) (quoting Heinrich ex rel. Heinrich v. Sweet, 49 F. Supp. 2d 27, 45 (D. Mass. 1999)). Where these heightened pleading requirements are not "satisf[ied]," it necessarily follows that the allegations have failed to give sufficient "notice" to defendants "of the fraudulent claims against them."[17] See Hayduk, 775 F.2d at 444.

Thus, although he expressly alleges that *all* Defendants are potentially liable under every one of his claims, Plaintiff has not adequately asserted that Microsoft has any responsibility whatsoever for the alleged misconduct that was perpetrated solely by the Other Defendants.

## V.    CONCLUSION

For all of these reasons, Plaintiff's claims against Microsoft should be dismissed in their entirety – with prejudice. In the alternative, i.e., should Microsoft's Fed. R. Civ. P. 12(b)(6) motion be denied, then Microsoft hereby moves for a more definite statement of the claims brought against it – pursuant to Fed. R. Civ. P. 12(e).[18]

---

[17] To be clear, the Fed. R. Civ. P. 9(b) heightened pleading requirements are imposed "even when the fraud relates to matters peculiarly within the knowledge of the opposing party." See Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 14 (1st Cir. 1984). Accordingly, "mere allegations of fraud . . . averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." See Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985).

[18] See Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.").

DATED:  February 28, 2023                    Respectfully submitted,

_____
Paul B. Lewis (BBO No. 690793)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel: 617.406.6000
Fax: 617.406.6100
Paul.lewis@us.dlapiper.com

**ATTORNEY FOR DEFENDANT
MICROSOFT CORPORATION**

<u>**CERTIFICATE OF SERVICE**</u>

I, Paul B. Lewis, hereby certified that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 28, 2023.

Additionally, per his request due to a possible lack of access to the ECF system, a copy of this filing has also been sent via email to the Plaintiff at hareltala@gmail.com on February 28, 2023.

_____
Paul B. Lewis