UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

HAREL TALASAZAN,

Plaintiff,

v.

MICROSOFT CORPORATION, OFFICE OF BAR
COUNSEL, BOARD OF BAR OVERSEERS,
DOROTHY ANDERSON, MATTHEW
STEWART, AND DOES 1-25,

Defendants.

CIVIL ACTION
NO. 1:22-cv-11764-DJC

---

**STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

David R. Marks (BBO# 548982)
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2362
david.marks@mass.gov

Dated: March 13, 2023

## <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................. 1

The Allegations of the Complaint ................................................................................ 2

Argument ..................................................................................................................... 4

    I.      This Court Should Apply *Younger* Abstention Because Talasazan
          Complains of an Active OBC investigation and On-going BBO
          Proceedings. ........................................................................................ 5

    II.     All State Defendants Are Immune from Suit ......................................... 9

    III.    The Complaint May Also Be Dismissed Because It Violates Rule 8's
          Requirement of a Short and Plain Statement Demonstrating Entitlement to
          Relief. ................................................................................................ 10

    IV.    Plaintiff's Suit Fails to State a Claim as Required by Rule 12(b)(6). .................. 12

        A.     Count I: Alleged violations of "Article Four" of the U.S.
             Constitution and the Fourteenth Amendment Due Process Clause .......... 13

        B.     Count II: Alleged Violations of the Sixth Amendment and Due
             Process Clause ...................................................................... 15

        C.     Count III: Alleged Violation of the Fifth Amendment ............................ 15

        D.     Count IV: Alleged Violation of the Due Process and Equal
             Protection Clauses .................................................................. 16

        E.     Count V: Alleged Violation of the Americans with Disabilities Act
             (ADA) ................................................................................... 16

        F.     Count VI: Alleged Violations of 12 U.S.C. § 3401 and Article III,
             Sec. 2 .................................................................................... 17

        G.     Counts VII and VIII: Requesting Equitable Contribution and
             Subrogation ........................................................................... 18

**Introduction**

Plaintiff Harel Talasazan, in his First Amended Complaint ("Complaint" or "Am. Compl."), has sued the Massachusetts Office of Bar Counsel (OBC); the Board of Bar Overseers (BBO); Dorothy Anderson, a First Assistant Bar Counsel with the OBC; and Matthew Stewart, an OBC investigator (together, the "state Defendants"). The claims all arise from the OBC's investigation, and initiation of disciplinary proceedings before the BBO, concerning Talasazan's fitness to practice law and/or his potential violation of the Massachusetts Rules of Professional Conduct, in his capacity as a licensed attorney in Massachusetts.[1] The Complaint would delay and circumvent the active OBC investigation and BBO proceedings, by asking this Court to enjoin such proceedings pending the outcome of this intervening action. But lawsuits such as this that would disrupt an on-going, earlier-filed state bar disciplinary action are subject to dismissal under so-called *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37 (1971). Moreover, the lawsuit is without merit.  The Complaint violates the Federal Rules of Civil Procedure and is so rambling, disjointed, prolix, and incoherent, that it fails to fully inform the Defendants of the legal or factual basis of the asserted claims, sufficient to enable them to adequately respond. The Complaint, despite spanning 38 pages, almost 700 pages of exhibits, and purporting to incorporate hundreds of additional pages contained in numerous dockets of other state and federal courts, also fails to adequately state a single claim, instead listing disorganized factual allegations and incomplete, conclusory legal allegations related to the OBC investigations. For these and other reasons detailed below, the Court should dismiss the case.

---

[1] The Complaint also names Microsoft Corporation as a defendant, apparently because Microsoft provides a virtual conferencing tool, Microsoft Teams, used by the OBC during its investigation.

## The Allegations of the Complaint

Bar Counsel's investigations of Talasazan's conduct as an attorney involves his representation of certain of his clients in litigation, and his use of his IOLTA account. *See generally* Am. Compl. During this investigation, and prior to any petition for discipline being filed with the BBO, Assistant Bar Counsel Anderson and Investigator Stewart requested Talasazan give a statement under oath, pursuant to Rule 4.4(a) of the Rules of the Board of Bar Overseers,[2] the equivalent of a deposition. This deposition was conducted virtually, using the Microsoft Teams application. Am. Compl. ¶¶ 25-27, 44-54. Talasazan alleges that, when he was provided a recording of the deposition and viewed it, he discovered that a portion of the recording had been "cut out or trimmed." Am. Compl. ¶¶ 68-70, 82.

Bar Counsel, as part of the investigation, also subpoenaed the records for Talasazan's IOLTA account and his business bank account. Am. Compl. ¶¶ 61-67, 71-78, 81-83, 88. Talasazan alleges some problem with these subpoenas but, other than the account being located at a bank in California, it is unclear what those problems entail. Talasazan also alleges that because he is totally deaf in his left ear, with tinnitus in that ear, and has bouts of vertigo, he is disabled and entitled to certain "reasonable accommodations." Am. Compl. ¶ 16. He also alleged that before he was admitted to the bar, he informed the Board of Bar Examiners of this disability. *Id.* Regarding the videotaped virtual deposition held on September 23, 2021, Talasazan alleged that Bar Counsel did not ask Talasazan if he needed a "reasonable accommodation," nor did it furnish him a "reasonable accommodation." Am. Compl. ¶¶ 16, 48. Talasazan does not, however, allege that before the deposition he informed Bar Counsel of his need for a "reasonable accommodation," nor does he identify in the Complaint what that "reasonable accommodation"

---

[2] Promulgated pursuant to Supreme Judicial Court Rule 4:01, Section 5(3)(h).

would consist of. He does allege that he requested a "reasonable accommodation" befvore a second scheduled deposition with Bar Counsel, but that deposition was never held. Am. Compl. ¶¶ 80, 84-85. A petition for discipline was issued against Talasazan by the Office of Bar Counsel and further proceedings are currently pending before the BBO.

Numerous allegations in the Complaint seem to refer not to any actions taken by the defendants but to potential defenses or explanations Talasazan desires to put forward in response to the allegations in the petition pending before the BBO. Many of these assertions are incoherent, immaterial, and/or prolix. For example, the Complaint, in addition to the nearly 700 pages of attachments, purports to "incorporate by reference" into the Complaint the entire court file and docket entries of two Massachusetts Superior Court cases, a Supreme Judicial Court case, a Newton District Court case, and all documents referred to in a case from the United States District Court for the Middle District of Tennessee. Am. Compl. ¶¶ 28, 100.[3]

With this lawsuit, Talasazan seeks to enjoin the Bar Counsel investigations and the BBO proceedings and thus prevent any discipline potentially being assessed against his law license. *See* Am. Compl. 38. The Complaint has 8 counts. Count One asserts that Talasazan has obtained a money judgment in his favor in a Superior Court action but because of the defendants' actions he cannot collect the judgment because doing so would "compound Talasazan in a crime" and paired with the disciplinary proceedings the defendants have allegedly violated "Article Four" of

---

[3] *See also, e.g.*, Am. Compl. ¶ 32 ("Upon information and belief, the confluence of the variation or the order of the full name of each person as a named party before the particular judge, in each of three judgments he or another Judge had heard a matter or so rendered said judgment in that Court had, at least in one instance, a connection to real property the particular Judge had a personal interest in, which Talasazan used public records to determine."), ¶ 96 ("Upon information and belief, the Lieutenant Governor of Massachusetts travelled to Los Angeles on or about October 24, 2022 to initiate or cause to occur, a surveillance operation of Talasazan."), ¶ 97 (The next day, the Lieutenant Governor returned to Boston on the same red eye flight as Talasazan).

the United States Constitution. The Complaint does not explain what crime is implicated or what defendants have done to interfere with his execution on the judgment. Am. Compl. ¶¶ 102-113. Count Two, citing the Sixth Amendment and the Due Process Clause of the U.S. Constitution, asserts that the defendants have committed crimes in the "spoliation" of evidence, issuing defective subpoenas, and in pursuing the petition for discipline. Am. Compl. ¶¶ 114-118. Count Three refers back to the Superior Court judgment Talasazan asserts the defendants' actions preclude his collecting, calling this a violation of the Fifth Amendment to the U.S. Constitution. Am. Compl. ¶¶ 119-124. Count Four refers to "discriminatory laws of . . . Massachusetts" and asserts that the Bar Counsel's investigation has violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Am. Compl. ¶¶ 125-144. Count Five alleges that the OBC has violated the Americans with Disabilities Act, 42 U.S.C. § 12132. Am. Compl. ¶¶ 145-152. Count Six alleges that there is a contract between the BBO and Talasazan due to his payment of bar dues and that the actions of OBC during the investigation breached that contract. Am. Compl. ¶¶ 153-163. Counts Seven and Eight sound in "equitable contribution" and "equitable subrogation." Am. Compl. ¶¶ 164-168.

<u>**Argument**</u>

The Court should dismiss Talasazan's Complaint for a number of reasons. First, because Talasazan complains of an active state bar disciplinary investigation and on-going BBO proceedings, in the course of which he is able to raise and seek relief for all his legal objections to procedural matters, and to present a defense to the petition for discipline, the Court should apply *Younger* abstention. *See Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 431-37 (1982) (applying *Younger* abstention to state bar disciplinary proceeding); *Brooks v. N.H. Supreme Court*, 80 F.3d 633, 637-40 (1st Cir. 2006) (same). Moreover, all the State defendants are immune from suit under the Eleventh Amendment and the doctrines of

quasi-judicial and quasi-prosecutorial immunity, such that the Court should dismiss this case. *See*

*Johnson v. Bd. of Bar Overseers of Massachusetts*, 324 F. Supp. 2d 276, 286 (D. Mass. 2004).

Additionally, the Complaint runs afoul of the Federal Rules of Civil Procedure, particularly Rule

8(a)(2) requiring a short and plain statement of the claims,[4] such that this Court should dismiss

this suit for failing to adhere to the Rules of Civil Procedure, under Rule 41(b). *See* Fed. R. Civ.

P. Rules 8, 11, 41. And finally, despite devoting nearly forty pages and 169 numbered

paragraphs to his averments, Talasazan fails to adequately state a single claim as required by

Rule 12(b)(6). Therefore, the Court should dismiss this suit.

## I.      This Court Should Apply *Younger* Abstention Because Talasazan Complains of an Active OBC investigation and On-going BBO Proceedings.

The OBC is currently actively investigating whether Talasazan has violated certain rules

governing the practice of law and a petition for discipline currently is pending before the BBO.

*See* Am. Compl. ¶¶ 24, 29, 35, 76, Ex. 5. Courts have routinely applied Younger abstention to

dismiss federal-court challenges to state bar-disciplinary proceedings, because state disciplinary

investigations and administrative proceedings are state judicial proceedings that implicate

important state interests and provide an adequate opportunity for Talasazan to assert his federal

claims.  *Middlesex*, 457 U.S. at 431-37; *Brooks*, 80 F.3d at 637-40; *Johnson v. Bd. of Bar*

*Overseers of Massachusetts*, 324 F. Supp. 2d 276, 282-84 (D. Mass. 2004).  This Court should

follow suit and dismiss this case.[5]

---

[4] The Court will observe that the Amended Complaint is extremely difficult to understand, given its disjointed, conclusory nature and general incoherence; that it attaches and purports to incorporate by reference reams of additional extraneous material; and includes scandalous, nonsensical, impertinent, and baseless allegations.

[5] Although the First Circuit has declined to decide whether a motion to dismiss based on *Younger* abstention should be resolved under Rule 12(b)(1) or 12(b)(6), *Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 n.6 (1st Cir. 2012), it is immaterial here whether *Younger* abstention falls under Rule 12(b)(1) or 12(b)(6), since the state Defendants confine themselves to the non-

(footnote continued)

*Younger* abstention is ordinarily required if (1) there is an "ongoing state judicial proceeding" involving the federal plaintiff that (2) "implicate[s] important state interests" and (3) provides "an adequate opportunity" for the federal plaintiff to assert his federal claims. *Middlesex*, 457 U.S. at 432; s*ee also Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192-97 (1st Cir. 2015) (describing and applying the test factors). "*Younger* abstention is mandatory if its conditions are met;" when *Younger* abstention applies, the Court dismisses the action and does not retain jurisdiction. *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005); *see, e.g., Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 778-781 (1st Cir. 1990) (ordering dismissal of claims precluded under *Younger* abstention doctrine).

*Younger* abstention applies here, where the state's bar administrative agencies are conducting an investigation and attorney disciplinary proceedings have begun, and where subsequent judicial review is available. *See Middlesex*, 457 U.S. at 434-37;[6] *Brooks*, 80 F.3d at 638; *cf. Bettencourt*, 904 F.2d at 778-781 (applying *Younger* abstention in the context of proceedings reviewing the determination of the Massachusetts state board of registration in medicine); *Coggeshall v. Mass. Bd. of Registration of Psychs.*, 604 F.3d 658, 664-65 (1st Cir. 2010) (applying abstention doctrine for proceedings before Massachusetts state boards of registration for medical professionals); *Johnson v. Board of Bar Overseers of Massachusetts*, 324

---

speculative, non-conclusory facts of the Complaint in seeking its dismissal.  *Cf. Mullane v. Massachusetts Bd. of Bar Exam'rs*, No. 20-cv-11382-DJC, 2021 WL 4132579, * 1, (D. Mass. Sept. 10, 2021) (appeal pending before First Circuit Court of Appeals).

[6] In *Middlesex*, the Supreme Court applied the *Younger* factors to a constitutional challenge to certain Disciplinary Rules of New Jersey's Code of Professional Responsibility and held that the first part of the abstention test was met in that the New Jersey Supreme Court considered its bar disciplinary proceedings to be "judicial" in nature; the second part of the test was met because the state has an "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses;" and the third part of the test was met because the plaintiff had the opportunity to raise his constitutional claims in the New Jersey Supreme Court. 457 U.S. at 433-36.  All of these same points apply here as well.

F. Supp. 2d 276, 282-84 (D. Mass. 2004) (applying *Younger* abstention to an attorney's

challenge to disciplinary proceedings before the Massachusetts Board of Bar Overseers).

In *Johnson*, this Court held that BBO disciplinary proceedings satisfy each of the three

factors needed to apply the abstention: (1) the disciplinary proceedings are "judicial in nature";

(2) Massachusetts "has an 'extremely important interest in maintaining and assuring the

professional conduct of the attorneys it licenses;'" and (3) since "Massachusetts law expressly

guarantees to any aggrieved party the right of judicial review of administrative decisions,"

including whether they are "[i]n violation of constitutional provisions," "[i]n excess of the

statutory authority or jurisdiction of the agency," or "otherwise not in accordance with law,"

respondents in BBO disciplinary proceedings "have the opportunity to raise [such] claims in the

courts of the Commonwealth," satisfying the third requirement of *Younger*. 324 F. Supp. 2d at

283-84 (quoting *Middlesex*, 457 U.S. at 433-34 and MASS. G. L. c. 30A, § 14(7) (2015)).

Nor does the "bias" exception to *Younger* abstention, which "requires a plaintiff to seek

to recuse allegedly biased judges in the state proceeding," apply here. *Johnson*, 324 F. Supp. 2d

at 284 (citing *Middlesex*, 457 U.S. at 435 and *Bettencourt*, 904 F.2d at 780). Because Johnson

was "engaged in state administrative proceedings involving the same rules as those cited in her

complaint," she could not "challenge the constitutionality of those rules in federal court:"

"*Younger* requires abstention on her claims for declaratory and equitable relief," and "'once a

state judicial proceeding [has] begun,' *Younger* requires the 'exhaustion of state judicial

remedies' even though a final state court judgment would likely preclude any new federal

lawsuit." 324 F. Supp. 2d at 285 (quoting *Maymó-Meléndez v. Alvarez-Ramírez*, 364 F.3d 27,

34-35 (1st Cir. 2004); *see also Cobb v. Supreme Judicial Court of Mass.*, 334 F. Supp. 2d 50 (D.

Mass. 2004) (attorney subject to disciplinary proceeding barred by *Younger* abstention from

suing the Massachusetts Supreme Judicial Court to enjoin the state court from considering an

appeal of a disbarment order issued by a single justice); *Mullane v. Massachusetts Bd. of Bar Exam'rs*, No. 20-cv-11382-DJC, 2021 WL 4132579, (D. Mass. Sept. 10, 2021) (plaintiff barred from suing the Massachusetts Board of Bar Examiners for damages, declaratory, and injunctive relief related to alleged violations of Constitutional rights; complaint dismissed on abstention and immunity grounds).

This case is directly analogous to *Middlesex*, *Brooks*, and *Johnson* and should similarly be dismissed. Like Johnson, Talasazan's "challenge emanates from [a] proceeding currently underway in the Massachusetts Board of Bar Overseers," and as such, *Younger* "requires abstention . . . [and] 'exhaustion of state judicial remedies.'" 324 F. Supp. 2d at 285. Indeed, Talasazan is specifically attempting to "challenge the constitutionality of [the rules and conduct of the BBO proceedings] in federal court," *id.*; in his own words, he "[brought] this action . . . for . . . constitutional violations relating to remote depositions [during the OBC investigation] . . . and [the BBO] proceedings against [him]." Compl. ¶ 1. Each of Talasazan's claims arises from and relates directly to the investigation and BBO proceedings.

Unlike the plaintiff in *Johnson*, however, Talasazan "did not seek the recusal of any allegedly biased judge;" thus, the Court need not consider the bias exception to mandatory *Younger* abstention. *Johnson*, 324 F. Supp. 2d at 284, citing *Brooks*, 80 F.3d at 640 (finding that "the bias exception to the *Younger* abstention doctrine is inapposite if an ostensibly aggrieved party fails to employ available procedures for recusal of allegedly biased judges" and, even if alleged, "the baseline showing of bias necessary to trigger *Younger's* escape mechanism requires the plaintiff to offer some evidence that abstention will jeopardize his due process right to an impartial adjudication"). Like the plaintiff in *Brooks*, Talasazan has made no such allegation or showing. For all the reasons set forth above, *Younger* abstention is fully warranted here.

## II.     All State Defendants Are Immune from Suit.

Also as in *Johnson*, the state Defendants are immune from this suit. Under *Johnson,* the

state Defendants, including the BBO, OBC, and individual OBC employees sued in both their

official and individual capacities, are immune from suit in federal court under the Eleventh

Amendment and under the doctrines of quasi-judicial and quasi-prosecutorial immunity. The

*Johnson* court held that "[t]he [BBO] and the [OBC] are both entities created by court rule to

support the operation of the Courts of Massachusetts through regulation of the Bar," such that

"they are arms of the state, subject to the Eleventh Amendment bar against suits for money

damages in federal court." 324 F. Supp. 2d at 286 (citing *Pennhurst State Sch. & Hosp. v.

Halderman*, 465 U.S. 89, 100 (1984)). The individual defendants here—Assistant Bar Counsel

and Bar Counsel's Investigator—similarly are immune under *Pennhurst* for actions taken in their

official capacities, as well as under the doctrines of quasi-judicial and quasi-prosecutorial

immunity for actions taken in their individual capacities. 324 F.Supp. 2d at 286-287 (citing

*Bettencourt*, 904 F.2d at 781).

The BBO and the OBC, as they were in *Johnson*, "are arms of the state, subject to the

Eleventh Amendment bar against suits for money damages in federal court," and have not

waived their Eleventh Amendment immunity, and individual defendants Dorothy Anderson

(Assistant Bar Counsel) and Matthew Stewart (investigator with Bar Counsel)[7] "are also immune

from suit based on their actions taken in their official capacities." 324 F. Supp. 2d at 286; *see

also Brait Builders Corp. v. Massachusetts Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir.

2011) (finding that it is "perfectly clear" that the Eleventh Amendment bars suits against state

---

[7] Defendant Stewart is not a barred attorney, so his title is not "Bar Counsel," but he directly
supports Bar Counsel as an investigator, and acts "under [her] direction, supervision and
control." Compl. ¶ 7.

agencies, "regardless of the relief sought"); *Will v. Michigan Dep't of State Police*, 491 U.S. 58,

71 (1989) (holding that state officials named in their official capacities are not "persons" who

may be sued for damages under 42 U.S.C. § 1983). The individual defendants are also "entitled

to absolute immunity" in their individual capacities "for acts committed within the scope of their

responsibilities." 324 F. Supp. 2d at 286. Like Defendant Crane (Bar Counsel) in the *Johnson*

case, Defendants Anderson's and Stewart's roles as Bar Counsel and investigator with Bar

Counsel are "prosecutorial in nature," so are "entitled to absolute immunity" as "[s]tate officials

performing prosecutorial functions." *Id.* at 287. Because the state Defendants, including the

individual Defendants sued in both official and personal capacities, are entirely immune from

suit, the case against them should be dismissed. *Johnson*, 324 F. Supp. 2d at 287.

### III.   The Complaint May Also Be Dismissed Because It Violates Rule 8's Requirement of a Short and Plain Statement Demonstrating Entitlement to Relief.

To be sure, the Court need go no further than *Younger* abstention and the immunity

doctrines set forth above to dismiss the case. But, to the extent more is required, the complaint

may also be dismissed because it violates Rule 8's requirement that the complaint contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2). "A district court, as part of its inherent power to manage its own docket, may dismiss

a case for any of the reasons prescribed in Federal Rule of Civil Procedure 41(b)," including

failure to comply with the Federal Rules. *See Torres-Alamo v. P.R.*, 502 F.3d 20, 25 (1st Cir.

2007); Fed. R. Civ. P. Rule 41(b) ("If the plaintiff fails . . . to comply with these rules [of civil

procedure], . . . a defendant may move to dismiss the action."). "A district court has the power to

dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure,

including Rule 8(a)(2)'s 'short and plain statement' requirement." *Belanger v. BNY Mellon Asset

Mgmt., LLC*, 307 F.R.D. 55, 58 (D. Mass. 2015) (quoting *Kuehl v. F.D.I.C.*, 8 F.3d 905, 908 (1st

Cir. 1993). Talasazan's complaint is excessively long, rambling, disjointed, and unintelligible, violating Rule 8(a)(2). It should be dismissed under Rule 41(b).

Dismissal is proper where "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Sayied v. White*, 89 F. App'x 284 (1st Cir. 2004) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see also Kuehl v. F.D.I.C.*, 8 F.3d 905, 908 (1st Cir. 1993) (upholding dismissal of 43-page complaint for violating Rule 8(a)'s concise statement requirement). For example, in *Sherwood Forest Neighbors Ass'n, Inc. v. Town of Becket*, this Court dismissed the plaintiffs' complaint, which contained 71 numbered paragraphs and a series of attachments totaling over 100 pages, for failure to comply with Rule 8, noting that "the substantive deficiencies in Plaintiffs' claims . . . [we]re glaring and almost certainly would have been fatal," and Plaintiffs' similar case in state court "[wa]s proceeding apace and w[ould] provide Plaintiffs a full opportunity to obtain any remedies to which they are entitled." 466 F. Supp. 2d 399, 401-03 (D. Mass. 2006).

The Complaint here fails to comply with Rule 8 because "the allegations . . . are so disjointed and disorganized that the complaint, 'falls into the category of [c]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim.'" *Solomon v. Khoury*, No. CV 16-10176, 2017 WL 598758, at *2 (D. Mass. Feb. 13, 2017) (quoting *Phelps v. Local 0222*, No. 09-cv-11218-JLT, 2010 WL 3342031, at *5 (D. Mass. Aug. 20, 2010) (Report and Recommendation) (internal quotations omitted). The Amended Complaint, with attachments, runs to nearly 700 pages, and purports to incorporate by reference the entire court files of five separate docketed cases in four separate courts. Am. Compl. ¶¶ 28, 100. And the allegations are prolix and incoherent; none of the counts asserted presents a coherent claim. Rather, each count summarily charges a violation of various sprawling Constitutional and/or statutory rights in the heading, followed by a string of

disjointed claims unresponsive to the particular right asserted in the heading. Thus, the Court should dismiss this case pursuant to Rules 8(a)(2) and 41(b).

## IV.  Plaintiff's Suit Fails to State a Claim as Required by Rule 12(b)(6).

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-59 (2007)). The complaint must "set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory,'" or else be dismissed. *Id.* (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)). The court is not obligated to credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *see also Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1 (1st Cir. 2001) (holding that the court should not credit "conclusory assertions, subjective characterizations, or outright vituperation").

The Complaint does not adequately state a claim for relief. The Complaint contains nearly 40 pages of ramblings loosely related to the ongoing investigation and disciplinary proceedings. Not one of the eight counts adequately asserts defendants' liability under all elements of any claim; indeed, the counts are not sufficiently clear about what claims they allege to lay out the elements at all. Just like *Sayied v. White*, "[t]he complaint in this case . . . is so prolix, redundant and unintelligible that it would [be] unreasonable to expect defendants to frame a response to it." 89 F. App'x 284 (1st Cir. 2004). The Court should dismiss the case for failure to state a claim under Rule 12(b)(6) for the reasons outlined below.

A.      **Count I: Alleged violations of "Article Four" of the U.S. Constitution and the Fourteenth Amendment Due Process Clause**

The first count appears to allege that the disciplinary proceedings and related investigation violate "Article Four" of the Constitution and the Fourteenth Amendment's Due Process Clause. Am. Compl. ¶¶ 102-13. It fails to adequately state a claim because (1) Article Four protects out-of-state citizens from differential treatment compared to in-state citizens, and (2) Talasazan has not alleged that the State has directly burdened a protected property interest.

The Complaint mentions both the Full Faith and Credit and the Privileges and Immunities Clauses of Article IV of the Constitution. Am. Compl. ¶¶ 103, 108. The Full Faith and Credit Clause has no conceivable application here.  Its purpose was to create judicial parity across the separate states, such that the laws and judgments of one state must be respected by courts of another. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998). "The Full Faith and Credit Clause provides that 'state judicial proceedings shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Alvin J. Coleman & Son, Inc. v. Francis Harvey & Sons, Inc.*, No. 12-CV-40068-TSH, 2012 WL 3686641, at *2 (D. Mass. Aug. 23, 2012) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380) (internal quotation marks omitted)). "To invoke the clause, among other things, there needs to be a final judgment on the merits in the state court action." *Id.* (citing *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011); *Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*, 181 F.3d 174, 177 (1st Cir.1999)). Similarly, the Privileges and Immunities provision of Article Four also "'establishes a norm of comity' that is to prevail among the States with respect to their treatment of each other's residents." *Hicklin v. Orbeck*, 437 U.S. 518, 523–24 (1978) (quoting *Austin v. New Hampshire*, 420 U.S. 656, 660 (1975)) (internal citations removed). Here, although Talasazan is

currently a citizen of California, his Massachusetts bar license is under investigation; he is being treated as any other holder of a Massachusetts bar license would be, and he has not alleged otherwise. Article Four simply does not apply here.

The Complaint's assertion that, due to the Defendants' actions, his collecting on a Judgment would implicate him in a crime, is neither factually nor legally supported.[8] The charge that the State Defendants have violated his Fourteenth Amendment due process property rights is similarly unclear as to which rights and how. Am. Compl. 107, 112-13. To violate due process, a state government must *directly* negatively affect a protected property interest; indirect repercussions of state action will not rise to the level of due process violations. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767-68 (2005), *overruled on other grounds by Huntsville Senior Servs. v. Alabama Dep't of Pub. Health*, No. 3:22-CV-1347-LCB, 2022 WL 17650483 (N.D. Ala. Dec. 13, 2022); *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 790 (1980). As to the Judgment, the Complaint fails to explain how the State Defendants *directly* prevented him from collecting it. *See Town of Castle Rock*, 545 U.S. at 767-68. Moreover, nothing the Defendants have done has negatively affected his law license. Rather, they have simply conducted an investigation and issued a petition for discipline, which awaits further adversarial adjudication. While a law license may not be suspended without due process, *see Matter of Saab*, 406 Mass. 315, 323 (1989), adjudication as to the proof of the petition's allegations, and any subsequent sanctions that may be imposed, has not yet taken place. Any

---

[8] Talasazan cites to *Yates v. United States*, 574 U.S. 528 (2015), for the proposition that collecting on the Judgment would implicate him in a crime. Am. Compl. ¶ 107. *Yates*, a staple in law school Statutory Interpretation courses, is entirely focused on statutory interpretation; specifically, the Supreme Court utilized foundational principles of statutory interpretation to determine that the term "tangible object," within the meaning of the Sarbanes-Oxley Act, does not include fish. The only connection between the *Yates* case and criminal law at all is that portions of the Sarbanes-Oxley Act contain criminal penalties.

such claim is premature. (And, as noted in the discussion of *Younger* abstention, nothing prevents Talasazan from challenging the procedures used during his bar disciplinary proceeding in that proceeding itself.) Thus, Talasazan fails to state a claim under the Fourteenth Amendment.

**B.     Count II: Alleged Violations of the Sixth Amendment and Due Process Clause**

In Count II, Talasazan accuses the State Defendants of committing a crime and depriving him of his Sixth Amendment right "to obtain witnesses in his favor." Am. Compl. ¶¶ 115-18. Though the Confrontation Clause is mentioned, he makes no allegation that would actually establish such a claim. *See, e.g.*, *Maryland v. Craig*, 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a *criminal defendant* by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.") (emphasis added). Talasazan has not alleged that he is a defendant in any criminal proceedings; the BBO proceedings are civil. As such, Talasazan fails to state a claim under the Sixth Amendment. And Talasazan fails to state a claim under the Due Process Clause, as discussed above.

**C.     Count III: Alleged Violation of the Fifth Amendment**

In Count III, Talasazan accuses the State Defendants of violating his Fifth Amendment rights. Am. Compl. ¶¶ 119-24. The relevant portion of the Fifth Amendment protects *criminal* defendants; it "provides that '[n]o person . . . shall be compelled in any *criminal* case to be a witness against himself.'" *Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022) (quoting *Malloy v. Hogan*, 378 U.S. 1, 6 (1964)) (emphasis added). As discussed above, Talasazan has not alleged that he is a criminal defendant. Nor is there any proper claim that the bar disciplinary

investigation has required him to become a witness against himself in a criminal prosecution. As such, the Fifth Amendment does not apply, and he fails to state this claim.

### D.   Count IV: Alleged Violation of the Due Process and Equal Protection Clauses

Talasazan fails to state a claim under the Due Process Clause, as discussed above. He similarly fails to state a claim under the Equal Protection Clause, where the Complaint contains no allegations that would make up the elements of such a claim. *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (finding that a claim requires showing that one has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment); *see also Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995). There are no allegations sufficient to make out an Equal Protection claim.

### E.   Count V: Alleged Violation of the Americans with Disabilities Act (ADA)

"To state a claim for a violation of Title II [of the ADA], a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability." *Toledo v. Sanchez*, 454 F.3d 24, 31-32 (1st Cir. 2006) (citing *Parker v. Universidad de P.R.*, 225 F.3d 1, 4 (1st Cir. 2000); *32 42 U.S.C. § 12132.) "To prevail on . . . a reasonable accommodation claim, a plaintiff must show . . . a request for a *specific* accommodation that is both reasonable and necessary to allow the handicapped individual an equal opportunity to use and enjoy the [public services], and the defendant's refusal to make the requested accommodation." *Summers v. City of Fitchburg*, 940 F.3d 133, 139 (1st Cir. 2019) (emphasis added). "[T]he ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request,' . . . [which] must be 'sufficiently direct and specific.'" *Reed v.*

*LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) (quoting Henry Perrett, Jr., 1

AMERICANS WITH DISABILITIES ACT HANDBOOK, § 4.17, at 121 (3d ed.1997); *Wynne v. Tufts*

*Univ.*, 976 F.2d 791, 795 (1st Cir. 1992)).

Talasazan fails to state a claim under the ADA because he has not alleged that he is

"disabled" within the meaning of the statute, nor has he alleged that he sought and was denied

specific reasonable accommodations under the statute. Talasazan says that he is disabled because

he is deaf in his left ear. Am. Compl. ¶¶ 16, 35. But no allegations suggest that he was excluded

from participation in adjudicatory proceedings (since none have occurred), that his participation

in the deposition was hindered in any way, or that he sought and was denied reasonable

accommodations as a result of this "disability" prior to the deposition. Am. Compl. ¶¶ 149-51.

Talasazan is not a "qualified individual with a disability under the ADA" because being

deaf in one ear, without more, does not rise to the level of "disabled" under the ADA. *Santiago*

*Clemente v. Exec. Airlines, Inc.*, 213 F.3d 25, 32 (1st Cir. 2000) ("Given her normal hearing in

one ear and the existence of some residual hearing in the other, there is insufficient basis, without

more, for assuming a substantial loss in overall hearing ability. In short, Santiago has not

adduced sufficient evidence that, compared to the average person in the general population, she

was significantly restricted in her hearing.") Despite his summary assertions, Talasazan does not

appear to have been hindered from participation in the BBO proceedings by his own account in

the Complaint. Nor does Talasazan allege that he requested any specific "reasonable

accommodation," that was then improperly denied. Therefore, this claim must fail.

    **F.**    **Count VI: Alleged Violations of 12 U.S.C. § 3401 and Article III, Sec. 2**

In Count VI, Talasazan alleges that the State Defendants violated his right to financial

privacy under 12 U.S.C. § 3401, The Right to Financial Privacy Act. *See* Am. Compl. ¶¶ 153-63.

This act limits *federal* government access to consumer financial records. *See* 12 U.S.C. § 3401(3)

(defining "Government authority" as "any agency or department of the United States, or any officer, employee, or agent thereof"). As such, it does not apply with regard to the *state* Defendants and he fails to state a claim for Count VI.

    **G.**    **Counts VII and VIII: Requesting Equitable Contribution and Subrogation**

In the final two counts, Talasazan does not allege a violation of law by the Defendants, but rather requests the remedies of equitable contribution and equitable subrogation. Neither doctrine applies in this case. The doctrine of equitable contribution applies in the insurance context: "Under the doctrine of equitable contribution, where multiple insurers provide coverage for a loss of an insured, an insurer who pays more than its share of the costs of defense and indemnity may require a proportionate contribution from the other coinsurers." *Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co.*, 954 F.3d 397, 408 (1st Cir. 2020) (quoting *Ins. Co. of the State of Pa. v. Great N. Ins. Co.*, 473 Mass. 745, 747 (2016)). Talasazan is not an insurer.

And the doctrine of equitable subrogation "'enables [o]ne who pays, otherwise than as a volunteer, an obligation for which another is primarily liable, to be given by equity the protection of any lien or other security for the payment of the debt to the creditor, and to enforce such security against the principal debtor or collect the obligation from him.'" *In re Trask*, 462 B.R. 268, 277 (B.A.P. 1st Cir. 2011) (quoting *In re Deuel*, 594 F.3d 1073, 1079 (9th Cir. 2010) (internal quotations omitted)). Talasazan has not alleged a debt he has paid for which the state Defendants should be held liable. As such, to the extent that counts VII and VIII can even be considered claims, Talasazan has not met the pleading standard.

## **CONCLUSION**

For all the above reasons, the plaintiff's First Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

OFFICE OF BAR COUNSEL, BOARD OF BAR
OVERSEERS, DOROTHY ANDERSON, MATTHEW
STEWART,

By their attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

/s/ David R. Marks
_____
David R. Marks, BBO No. 548982
Assistant Attorney General
Office of the Attorney General
One Ashburton Place, Room 2019
Boston, MA 02108-1698
(617) 963-2362
David.Marks@mass.gov

On the Memorandum:
Charlotte Hendren Rose, Stanford Law School Graduate Fellow

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system, with copies sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and that a copy will be served via e-mail, to non-registered participants on March 13, 2023, and a copy placed in the mail, postage prepaid, to the plaintiff.

Harold Talasazan
520 N. Kings Rd., Apt. 305
Los Angeles, CA 90048
hareltala@gmail.com

/s/ David R. Marks
_____
David R. Marks
Assistant Attorney General

March 13, 2023

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I conferred with the plaintiff in an attempt, in good faith, to resolve or narrow the issue but was unable to do so.

/s/ David R. Marks
_____
David R. Marks
Assistant Attorney General