FILED
IN CLERKS OFFICE

2023 APR 17 PM 3: 39

[PROPOSED AMENDED]
**PLAINTIFF'S OPPOSITION AND MEMORANDUM OF REASONS AND
AUTHORITIES IN SUPPORT OF OPPOSITION TO STATE DEFENDANTS
MOTION TO DISMISS**

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

HAREL TALASAZAN

        Plaintiff,

v.

MICROSOFT CORPORATION,
OFFICE OF BAR COUNSEL,
BOARD OF BAR OVERSEERS,
DOROTHY ANDERSON,
MATTHEW STEWART, and
DOES 1-25

        Defendants.

Civil Action No. 1:22-CV-11764-DJC

## [PROPOSED AMENDED]
## PLAINTIFF'S OPPOSITION AND MEMORANDUM OF REASONS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO STATE DEFENDANTS MOTION TO DISMISS

*Subject to and without waiving* Plaintiff's Motions under advisement before the Court, Plaintiff Harel Talasazan ("Talasazan") respectfully brings this Opposition to Defendants the Board of Bar Overseers, the Office of Bar Counsel, Dorothy Anderson, and Matthew Stewart (together, referred to as, "State Defendants") Motion to Dismiss. Talasazan opposes State Defendants Motion to Dismiss in order to stop State Defendants from depriving Talasazan of the right to petition and proceed with the instant case before the Court without being harassed, intimidated and unjustly, improperly and illegitimately imposed with discipline[1].

## FACTUAL BACKGROUND

Over the course of two investigations Defendants Office of Bar Counsel, Dorothy Anderson, and Matthew Stewart (collectively referred to as "OBCDM") have conducted investigations into Talasazan's conduct as an attorney. *See Generally* First Amended Complaint (FAC). Among other things Talasazan has been *expressly* accused of, OBCDM accused Talasazan as mentally or physically incompetent to practice law. *See* First Amended Complaint (FAC) Pg. 6 ⊩ 24; Pg. 9 ⊩ 35; FAC Doc. 6-8, Page 20-21 of 79. Unlike the State Defendants Motion to Dismiss implies, Talasazan was never expressly accused of any violation of the Rules of Professional Conduct involving "his use of his IOLTA account." *See* State Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's First Amended Complaint for Injunctive Relief (referred to as "State Def. Memo ISO MTD"), Pg. 2; *Compare* FAC Doc. 6-8, Page 16 of 79. Nor does State Def. Memo ISO MTD address the fact that Defendant Dorothy Anderson ("Anderson") has threatened to administratively

---

[1] Talasazan opposes Microsoft's Motion to Dismiss because it cannot escape from the quality or state of being accountable and responsible as a result of State Defendants actions. **See Generally FAC; FAC Exh. 3.**

suspend Talasazan in order to advance the investigations in the absence of any good cause to do so. FAC Pg. 17 ❡ 55. These threats occurred on several occasions, and was not only done verbally over a phone confer discussion, but also in writing. Id.; **_See_ Affidavit in Support of Opposition to State Defendants Motion to Dismiss ("Aff. ISO") and Exhibits appended, attached, and/or affixed in support of Aff. ISO filed on March 27, 2023 therewith and, except as amended herein, is incorporated by reference herein as if fully set forth herein and is appended, attached, and/or affixed herewith as if filed concurrently herewith (collectively referred to as "Aff. ISO" and "Exh. ISO" respectively). Aff. ISO Pg. 16-17 ❡❡ 46-48, Exh. ISO 31-34**.

Nor do State Defendants address Defendant Matthew Stewart ("Stewart") – not Dorothy Anderson – being the author of documents containing legal arguments, even though Stewart is not licensed to practice law. _See_ **Aff. ISO Pg. 16-17 ❡❡ 46-48, Exh. ISO 31-34**.Nor have State Defendants addressed the issue concerning any improper advantages being taken against Talasazan by virtue of his notices and disclosures in confidence to State Defendants that, among others, the Apple Inc. spyware related disclosures Talasazan has had to deal with. **Aff. ISO Pg. 11-13 ❡❡ 31-35, Exh. ISO 15**. Nor do State Defendants address Anderson's [~~less than coincidental~~] real property purchase in Vermont on or about three months before the petition for discipline was filed against Talasazan. **Aff. ISO Pg. 8 ❡ 22, Exh. ISO 8**.

The State Defendants describe "[n]umerous allegations in the [FAC] seem to refer _not_ to any actions taken by the defendants" but then contradict that premise by virtue of the fact that there is no express accusation involving Talasazan's "use of his IOLTA Account" in the investigation to connect to the "allegations in the petition" that results from it. _Quoting_ State Def. Memo ISO MTD Pgs. 2, 3 (emphasis added). State Defendants also state that there is an

"active state bar disciplinary investigation and on-going BBO proceedings, in the course of

which [Talasazan] *is able to raise and seek relief for all his legal objections to procedural*

*matters, and to present a defense to the petition for discipline*[.]" *Quoting* State Def. Memo

ISO MTD Pg. 4 (emphasis added). However, the State Defendants have entered default

against Talasazan, which accepts the allegations in OBCDM's petition for discipline as true[2].

**Aff. ISO Pg. 20 ₽ 61, Exh. ISO 53**. And however labeled, State Defendants have *dishonored*

the legal effect of the Motion for Extension of Time Talasazan had filed, which was "allowed

without objection[.]" *See* [~~Motion to Re-issue summonses Exh.~~] Talasazan's Motion for

Extension of Time[3]; *See* Plaintiff's Motion to Supplement Exhibit 5[4] Exhibit 5.1-5.3, (Exh.

5.2 "Talasazan – 2ⁿᵈ defl ltr.pdf").

Since the instant case commenced, State Defendants have harassed Talasazan with

multiple notices purporting entry of default against Talasazan. **Aff. ISO Pg. 19 ₽ 56, Exh.**

---

[2] *Subject to and without waiving* that State Defendants have acted jointly with Defendant Corporation in the instant case, and in so doing, have waived sovereign immunity. Defendant Microsoft Corporation is attributable to State Defendants in the instant case by virtue of its agreement and acceptance to the contract in which it promises to indemnify State Defendants, including but not limited to a [mis]cited State Constitutional provision therein, impelling its obligation to indemnify State Defendants over the Agreement attached and incorporated into the FAC. See Generally FAC; See FAC, Ex. 3; See FAC, Ex. 5. Moreover, Microsoft has been on notice with regard to the instant case, and should have been on notice of the issues presented in the instant case well before Talasazan brought it to Microsoft's attention. In its motion to dismiss for failure to state a claim, Microsoft corporation attempts to introduce evidence irrelevant to the instant case, as the appropriate time when the terms of use were last updated by Microsoft is of critical distinction to the facts asserted in the First Amended Complaint. *See* FAC, Ex. 5, Doc. 6.8 Pgs. 30-35 (pg. 31 Microsoft's Terms of Use "Last Updated: February 7, 2022").

[3] Talasazan had also put measures in place to ensure that the Board of Bar Overseers cannot proceed with the petition for discipline by way of the Motion for Extension of Time he so filed, which the Board allowed "without objection." The State Defendants have proceeded with the Petition for Discipline, and in the most recent development, the State Defendants have defaulted Talasazan, have heard matters in aggravation to discipline Talasazan, and may be seeking the Supreme Judicial Court to enter judgment on the purported default, anyhow. *See* **(Sealed) Doc. Dated 12/02/2022 Pgs. 30-33 Def. Board Ruling "Allowed Without Objection"**

[4] Plaintiff's Motion to Supplement Exhibit 5 of the Plaintiff's Memorandum of Reasons and Authorities In Support of Objection to the Mailing of the First Amended Complaint and Opposition to the Defendants Joint Motion to Enlarge Time to File Responsive Pleading

**ISO 45**. State Defendants may have also heard matters in aggravation over and above the allegations in the Petition for Discipline against Talasazan.. *Id*. These purported default letters have continued to harass and intimidate Talasazan and reinforce the loss of confidence in the Board of Bar Overseers (Board) ability to competently hear and objectively determine issues before it. *See Generally* FAC, *See also* FAC, Exh. 5-9, 13, 14.

To say that if this case is dismissed Talasazan will be afforded an adequate opportunity to be heard or mount a defense against State Defendants is not only incorrect and not true, it is another iteration of what Talasazan has had to deal with since the first investigation began. State Def. Memo ISO MTD Pg. 4, supra; *See* Motion to Re-issue summonses, supra; FAC Pg. 17 ¶ 55;. *See* **Aff. ISO Pg. 20 ¶ 61, Exh. ISO 53** [~~Ex. ISO Aff., Exh.~~ [ — ]]. It is only reinforced by virtue of the fact that, **among other reasons and authorities described and cited below,** Attorney Marks represents State Defendants which bars Talasazan from contacting State Defendants since he received express notice of it. *See* **Aff. ISO Pgs. 19-20 ¶¶ 45, 53.**[~~Ex. ISO Aff., Exh.~~]. Among other things alleged in the FAC:

- Since the beginning of the first investigation, Talasazan had reason to believe that the first investigation was improperly related to Stewart. ***See Generally* FAC; Aff. ISO Pg. 10 ¶¶ 29, 30; Aff. ISO Pg. 16,** *supra* [~~Exhibit~~ [ — ]] **The Aff. ISO and Exh. ISO** show that on or about August 5, 2021 Stewart – not Anderson – had been writing and signing documents that contained citations to authorities. **Id**. Talasazan questioned Stewart's objectivity in the investigation, and as the affidavit and exhibit attached herewith show, Anderson threatened to administratively suspend Talasazan when he raised the issue, in response. **Aff. ISO Pg. 16-17 ¶¶ 46-48, Exh. ISO 31-34** [~~See Aff. Ex.~~] Anderson wrote to Talasazan that Stewart works under her direction. **Aff. ISO**

**Pg. 10 P 30, Exh. ISO 14** Thus, as explained in more detail, either Stewart's work constituted the unauthorized practice of law or Anderson's work was the product of reckless indifference to direct, supervise or control Stewart. **Aff. ISO Pg. 16-17 PP 46-48, Exh. ISO 31-34.** State Defendants cannot have their cake and eat it, too.

- Anderson's work product vis-à-vis the attachment to the opposition she had submitted in support of her opposition to Talasazan's Motion to Quash the second subpoena, reflects the disconnect between the work Stewart authored which Anderson did not really sign, or the observance of providing Talasazan with express notice of the accusations against him. *See* **FAC Exh. 5 (Doc. 6-8 filed 11/02/2022)**

- The testimony that should have preserved Talasazan's objections to irrelevant questions made by Anderson [5] had been "trimmed" and thus spoliated. When Talasazan, who is deaf in his left ear, brought it to the attention of the Board, his request for an investigation was so swiftly denied that it would be unreasonable to believe that an investigation was even conducted. *See* **FAC Exh. 5, pg. 2 (Doc. 6-8 filed 11/02/2022).**

- State Defendants have a pecuniary and reputational interest in the outcome of the Disciplinary proceedings, and if Talasazan asserted them there it would make the OBCDM and Board judges of their own financial interests such that the outcome cannot be neutrally nor impartially determined without affecting those pecuniary interests. **Aff. ISO Pgs. 1-9 PP 1-27, Exh. ISO 1-12**

---

[5] During the first virtual deposition taken on Microsoft Teams which Talasazan had answered *subject to and notwithstanding* his reservation of rights, privileges, and immunities and which, Talasazan only so answered *after* being threatened by Anderson with administrative suspension because he refused to answer said irrelevant question.

- When OBCDM tried to have Talasazan appear virtually to a second video deposition on Microsoft Teams, Talasazan:

    1. Requested reasonable accommodation under the Americans with Disabilities Act **FAC Pgs. 22-24 ⁋⁋ 80-85**; **and**

    2. Had already notified Microsoft of a breach of its terms of use and among other things, requested Microsoft to preserve evidence to ensure that the authenticity of said proposed second Microsoft Teams virtual deposition would not become a bludgeoning instrument by OBCDM again. ***See* Aff. ISO Pg. 16 ⁋ 44, Exh. ISO 29**

Instead of reasonably accommodating Talasazan, OBCDM cancelled the second Microsoft Teams deposition. ***See* FAC Pg. 24 ⁋ 85.**

## ARGUMENT

State Defendants have moved to dismiss Plaintiff's complaint "for a number of reasons." State Def. Memo ISO MTD, pg. 4. Those "reasons" are "because . . . [Talasazan] is able to seek relief for all his objections to procedural matters, and to present a defense to the petition for discipline, the Court should apply *Younger* abstention." Id. Second, "State Defendants are immune from suit under the Eleventh Amendment and the doctrines of quasi-judicial and quasi-prosecutorial immunity should . . . dismiss the case" State Def. Memo ISO MTD pg. 4-5. Third, "the [FAC] runs afoul of the Federal Rules of Civil Procedure." Id. Pg. 5. Finally, "Talasazan fails to state adequately a single claim as required by Rule 12(b)(6)." Id. As the facts above, and the reasons and authorities below show, none of State Defendants "reasons" are meritorious.

**I.** **Abstention is not appropriate when certain state proceedings should not be allowed to continue without federal-Court interference based on principles of judicial economy and proper state-federal relations.**

It is a "'basic doctrine of equity jurisprudence that courts of equity *should* [] *act* . . . when the moving party has [*no*] adequate remedy at law and [*will suffer*] *irreparable injury if denied equitable relief*.'" *Quoting* Morales v. TWA, 504 U.S. 374 at pg. 381; 112 S. Ct. 2031 at pg. 2035; [. . .] (emphasis added) *Citing* Younger v. Harris, 401 U.S. 37, 43-44, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971). In <u>Morales</u> Justice Scalia, juxtaposed the abstention doctrine to:

> In Ex parte Young, 209 U.S. 123, 156, 52 L. Ed. 714, 28 S. Ct. 441 (1908), the Supreme Court held that [the abstention] doctrine *does not* prevent federal courts from enjoining state officers "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution. Where, as here, enforcement actions are imminent – and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising his federal defenses -- there is no adequate remedy at law. *Quoting* Morales, supra, at pgs. 381, 2031 supra, (citations omitted) (emphasis added).

State Defendants point to the oft cited case <u>Middlesex Ethics Committee v. Garden State Bar Ass'n</u> 457 U.S. 423, 102 S. Ct. 2515 (1982) which distinguished <u>Younger</u> in that abstention *should not* apply to attorney discipline cases where, as here, State Defendants clearly bar the interposition of constitutional claims, exceptional circumstances are present, and State Defendants have engaged in bad faith. <u>Id</u> at pgs. 431-32. "Abstention is based upon the theory that "'[the] *accused* should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'" *Quoting* Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435, 102 S. Ct. 2515, 2523 (1982) (*Quoting*

Younger v. Harris, 401 U.S., at 45, quoting Fenner v. Boykin, 271 U.S. 240, 244 (1926) (emphasis added).

**A. Just as the Supreme Court in <u>Middlesex</u> cogently observed, a person must have been actually blamed for wrongdoing to be able to set up and rely on a defense in the first place.**

In the case at hand, State Defendants "investigation" into Talasazan conduct as an attorney has comprised of four *express accusations*: (1) violating the rules of professional conduct by filing a complaint with the Supreme Judicial Court that lacked a sufficient non frivolous basis, (2) being disruptive in a courtroom, (3) being mentally or physically impaired to practice law, and (4) being a percipient witness to a case. The first three ( (1) – (3) ) concern the first investigation (ending in numbers 786), and the fourth ( (4) ) concerns the second investigation (ending in numbers 817). *See Generally* FAC. Whatever else is alleged in the petition for discipline is the product of the illegal procedure, statutory, common law and constitutional violations alleged against Defendants in the first amended complaint.

Defendants largely ignore the fact that none of these express accusations relate to any malfeasance even though there are several Rules of Professional Conduct at OBCDM's disposal to have made them. In re Ruffalo, 390 U.S. 544, 545, 88 S. Ct. 1222, 1223 (1968) (The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.) Thus, dismissal is not warranted where, as here, there has been no *express* accusation that relates to any Rule of Professional Conduct concerning any sort of malfeasance and thus, no cause to investigate Talasazan with respect to his financial records as to warrant its issuance in either investigation, or charge in the Petition for discipline.

**B. State Defendants exemplified insufficient respect for and effect to the courts of, and a resident in, another jurisdiction.**

State Defendants contend that it is not necessary to deny a single, certain or material point in the FAC, and that ultimately, fundamental questions that a court needs to decide, one way or the other, has either been issued, ordered or ruled on lawfully by State Defendants or will be lawfully ruled, ordered and adjudged in State Court. Simply and bluntly put, that is not true and it is incorrect.

Notably, at all relevant times Talasazan was a resident of California and his records sought by State Defendants from Bank of America, were in Delaware. FAC Pg. 2 ℙ 2; *See also* FAC Exh. 6 at pg. 6. Although State Defendants knew or should have known Talasazan resided in California, State Defendants explicitly approved, authorized and supported the manufactured *unity* of citizenship when, for instance, Anderson incorrectly and falsely asserted that Talasazan's bank account was located in Massachusetts when it was not and that "[a]s per *Bar Counsel's Standing Convention with Bank of America, subpoenas are served directly to the institutions data processing center at the Delaware* [post office box] *address provided*." FAC Exh. 6 at pg. 6 (emphasis added). Proceeding with those subpoenas contravened, among other authorities, the Due Process Clause of the Fourteenth Amendment of the Constitution the Massachusetts Long Arm Statute which provides: "[w]hen the law of this commonwealth requires that in order to effect service one or more designated *individuals* be *served, service outside this commonwealth* under this chapter *shall be made* upon the designated *individual or individuals*." Mass. Ann. Laws ch. 223A, § 8 (emphasis added); *See* Me. Cmty. Health Options, 140 S. Ct. 1312 (2020), *infra*; *Compare* Hermanson v. Szafarowicz, 457 Mass. 39, 40, 927 N.E.2d 982, 985 (2010) (Where there

is an irreconcilable conflict between a court rule and a statute, the statute supersedes the rule.)[6] Thus, in the instant case, State Defendants conduct demonstrates the improper use of official power to compel Talasazan to submit to the wishes of State Defendants who yield it. *See* Murray's Lessee v. Hoboken Land & Improvement Co., 59 US 272, 276 (1856) (Origins of Constitutional rights including Due Process; *Citing* Edward Coke, The Second Part of the Institutes of the Laws of England, 45 (1797); *See also* Story, Commentaries on the Constitution of the United States § 1783 (1833); *Compare* Uzuegbunam v. Preczewski, 141 S. Ct. 792, 794 (2021) (Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages)[7]. The FAC also shows that, among other things, State Defendants violated the modes of proceeding which *must* be pursued in investigating and petitioning against Talasazan.

---

[6] Service on foreign corporations is [also] provided by G. L. c. 223, § 38, as appearing in St. 1939, c. 451, § 61. This provides, "In an action against a foreign corporation . . . which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the preceding section [§ 37] relative to service on domestic corporations in general . . ."

The preceding section, § 37, as amended through St. 1965, c. 685, § 56, provides in pertinent part: ". . . In an action against a domestic corporation . . . service shall be made upon the president, treasurer, clerk . . . cashier, secretary, agent or other officer in charge of its business . . . ."

The statutes cited require service upon one of these designated individuals. This was not done. We are of opinion that this objection is well taken, and that for this reason the service was invalid. *Quoting* Kagan v. United Vacuum Appliance Corp., 357 Mass. 680, 685, 260 N.E.2d 208, 211 (1970)

[7] *See also* Roller v. Holly 176 U.S. 398 (1899); *See also* Wisconsin v. Constantineau 400 U.S. 433 (1971) (an exception to the abstention doctrine lies where the challenge to a state law is grounded on a claim that it impinges on fundamental civil liberties and constitutional rights); *See Generally* Smothers v. Gresham Transfer, Inc., 332 Or. 83, 23 P.3d 333 (2001) (historical roots of American Law, citing among others Coke, supra, and 1 William Blackstone, Commentaries on the Laws of England (1765).)

**State Defendants impliedly *admit* to the Court that Younger abstention is not warranted where, as here, Talasazan is barred from raising his constitutional arguments in the disciplinary proceeding. Def. Memo ISO MTD Pg. 2. Even prospectively, State Defendants have entered default against Talasazan even though, among other things, the instant case has commenced and is ongoing. Aff. ISO Pg. 19 ¶ 56; *See* ALM Sup. Jud. Ct. Rule 4:01 *et seq*[8]. Moreover, the Long Arm Statute, cited supra, the Rules of the Supreme Judicial Court and the Rules of the Board of Bar Overseers are patently irreconcilable with one another. Mass. Ann. Laws ch. 223A, § 8; *Cf.* USCS Const. Amend. 14; *Compare* Def. Memo ISO MTD Pg. 2 ("pursuant to Rule 4.4(a) of the Rules of the Board of Bar Overseers [footnote 2]" states that it is "[p]romulgated pursuant to Supreme Judicial Court (SJC) Rule 4:01[.]")[9] State**

---

[8] *See up to and including*
Section 7. The Bar Counsel
    (1) shall investigate all matters involving alleged misconduct by a lawyer coming to his or her attention from any source, *except matters involving alleged misconduct by the Bar Counsel, assistant Bar Counsel, or any member of the Board*, which shall be forwarded to the Board for investigation and disposition, *provided that Bar Counsel need not entertain any allegation that Bar Counsel* in his or her discretion determines to be frivolous, *to fall outside the Board's jurisdiction*, or to involve conduct that does not warrant further action[.]
*Quoting* ALM Sup. Jud. Ct. Rule 4:01 (emphasis added)
*Compare*
    Section 8. Procedure (1) Investigation. In accordance with any rules and regulations of the Board, investigations (whether upon complaint or otherwise) shall be conducted by the Bar Counsel, except as otherwise provided by section 7(1) of this rule.
*Ibid.*
[9] *See*
    Whenever *a subpoena has been duly approved under the law of another jurisdiction for use in lawyer discipline or disability proceedings, Bar Counsel* may request that the Board issue a subpoena requiring the attendance and testimony of the witness in this Commonwealth and the production of any evidence, including books, records, correspondence or documents, relating to the matter in question.
*Quoting* ALM R.B.B.O § 4.5A(a); *Compare* 8 Del. C. § 321(a) (see footnote 11, infra); and
*Compare*
    Each subpoena issued in accordance with this subchapter shall be served in the manner provided for service of summonses in the Courts of the Commonwealth. Alternatively, service may be made upon any lawyer in hand or by certified, registered, or first-class mail addressed to the lawyer at either the residence or office address furnished in the last registration statement filed by the lawyer in accordance with S. J. C. Rule 4:02. A copy of each investigative subpoena served

**Defendants recognize, on the one hand, that the Rules of the Board of Bar Overseers should be in accordance with and under Supreme Judicial Court Rules 1:01** *et seq.***, but on the other hand, fail to address the plain and ordinary meaning pursuant to Mass. SJC Rule 1:04 which States:**

> **To the extent of** *any conflict* **between the Massachusetts Rules of Civil Procedure, the Massachusetts Rules of Criminal Procedure, the Massachusetts Rules of Appellate Procedure and the Rules of the Supreme Judicial Court, the Appeals Court, and the various Departments of the Trial Court, the Massachusetts Rules of Civil, Criminal and Appellate Procedure** *shall control.* *Quoting* **Mass. SJC Rules 1:04 (emphasis added)**

Among other things asserted in the FAC, State Defendants called Bank of America before it, and ordered under penalty, an act to be done in the State of Delaware.[10] *See* **FAC Exh. 5 at pg. 20** [~~FAC, Exhibits 5-9~~]; *Compare* Mass. S.J.C. Rules 1:04**, supra;** *Compare* [~~1 (Rules of Civil Procedure Control)~~]; *Cf.* **USCS Const. Amend. 14; Mass. R. Civ. P. 45** *Cognate to* Fed. R. Civ. P. 45 (d)(3)(A) (mandatory grounds for quashing or modification of subpoena); *See* U.S. Const. art. IV, § 2, cl. 1; *See* U.S. Const. 5th Amend. In the first instance, the first subpoena was served to a post office box in Wilmington, Delaware, and a copy of that said subpoena was sent to Talasazan's old apartment where he did not live at the time. In the second instance, the second subpoena was served to the same post office box in Wilmington, Delaware and a copy was sent to Talasazan's old office address – not to Talasazan individually – during the corona virus pandemic and the state mandated closures declared as a result of it. *See* FAC, Exhibits 5-9**;** *See* **Smith v. I.R.S. No. MC16-165-LPS,**

---

on a person other than the Respondent shall be mailed to the Respondent. *No witness fee or travel allowance shall be paid or tendered to any Respondent subpoenaed hereunder.* **ALM R.B.B.O § 4.6 (emphasis added)**

[10] The evidence should leave no doubt that Defendants Motion to Dismiss must be denied. *See Generally* FAC; Affidavit in Support of Motion (Aff ISO) and Exhibits in Support of Motion (Exh ISO) attached and filed **03/27/2023 in the instant case** concurrently therewith **except as amended is incorporated by reference herein as if fully set forth herein**; See Documents filed by Talasazan in the instant case.

**2018WL605870 at \*2 (D. Del. 2018) (800 Samoset Drive Newark, Delaware is the correct address); Compare FAC Exh. 5 at pg. 6 (quoting Defendant Anderson), supra.**

State Defendants knew or should have known that a post office box is not an individual[11]. **Tellingly, nothing about Defendant Anderson's invocation of the Bar Counsel's "Standing Convention" quoted above is mentioned in State Defendants Motion to Dismiss. FAC Exh. 5, pg. 6, supra. Nor was Talasazan's bank account or residence located in Massachusetts at the time Defendant Anderson requested the subpoena to obtain those records. Id. And** under the official mandates declared and ordered in response to the corona virus pandemic, Talasazan did not receive actual notice **from State Defendants** because his physical presence in either location were across the country from his home in Los Angeles, California. **Id.; See Mass. R. Civ. P. 45 (a)(4)(b) cognate to Fed. R. Civ. P. 45 (a)(4)(b); See also Firefighter Institute for Racial Equality v. St. Louis, 220**

---

[11] See 8 Del. C. § 321(a); "The Court of Chancery has also held, by way of analogy to Section 321, that service of a subpoena duces tecum upon a Delaware corporation may be accomplished by service upon the corporation's registered agent in Delaware." Quoting Kolyba Corp. v. Banque Nationale De Paris, 316 A.2d 585, 588 (Del. Ch. 1973) (emphasis added); See Generally 1 Corp & Commercial Practice in DE Court of Chancery § 3.04 See 8 Del. C. § 321(a). Care should be taken when deciding to serve process on a corporate officer or agent to assure that such officer or agent is in a position with the corporation such that process likely will find its way to those persons in the corporation responsible for overseeing litigation—or, in other words, to assure that service on such officer or agent constitutes reasonable notice to the corporation that will comport with due process. See 4 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1074 (1987). 1 Corp & Commercial Practice in DE Court of Chancery § 3.04

1 Corp & Commercial Practice in DE Court of Chancery § 3.04; 1 Corp & Commercial Practice in DE Court of Chancery § 3.04

    Del. Gen. Corp. Law § 48 provides as follows: If the president resides out of the State, service thereof may be made by delivering a copy thereof to the secretary or one of the directors of said corporation, or by leaving the same at the dwelling house or usual place of abode of such secretary or director, or at the principal office or place of business of the corporation in this State. Service by copy left at the dwelling house or usual place of abode, or at the said principal office or place of business in this State, to be effective must be delivered thereat at least six days before the return of the process, and in the presence of an adult person; and the officer serving the process shall distinctly state the manner of service in his return thereto; provided that process returnable forthwith must be served personally.

Quoting Bay State Gas Co. v. State, 20 Del. 238, 240, 56 A. 1114, 1115 (1901)

**F.32 898, 903 (8th Cir. 2000) (subpoena was quashed when Plaintiff did not serve Defendant with notice of production subpoena); *See also* Call of the Wild Movie, LLC v. Does 1-1, 062, 770 F.Supp.2d 332, 361-62 (D.D.C. 2011) (subpoenas were quashed when Plaintiff faxed and emailed subpoena but did not provide personal service of subpoena); *See also* Broumand v. Joseph, 522 F.Supp.3d 8, 23-24 (S.D.N.Y. 2021) (Court held that subpoenas modified to require witness testimony were unenforceable because they sought to compel witnesses to "attend" evidentiary hearing that was located outside Fed. R. Civ. P. 45(c) geographic limits.)** [12] Talasazan moved to quash both subpoenas, and Talasazan took a stand against the second subpoena. *Ibid.* The Board denied Talasazan's second motion to quash swiftly after an opposition and reply was filed. **See FAC, Exh. 5-8. Thus, State Defendants omit that the grounds for the subpoenas, referenced above, were fatally deficient on its face and statutorily structured in contravention of the mandates of those authorities and rules that ordain and promulgate its legal operation and effect.** [13]

---

[12] *See also* Exxon Shipping Co. v. U.S. Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994) (non-parties are given special protection against the time and expense of complying with subpoenas)

[13] *Accord:*

*Except where inconsistent with these Rules*, proceedings before hearing committees, hearing panels, special hearing officers and the Board shall conform generally to the practice in adjudicatory proceedings under Chapter 30A of the General Laws (State Administrative Procedure).

ALM R.B.B.O § 3.2 (emphasis added) [*But See* Mass. S.J.C. Rules 1:04 [1], Mass. Ann. Laws ch. 223A, § 8]

    *Compare to*

(a) At any stage of the investigation, Bar Counsel may request that the Board issue a subpoena requiring the attendance and testimony of a witness, including the Respondent, and the production of any evidence, including books, records, correspondence or documents, relating to any matter *in question in the investigation.*

ALM R.B.B.O § 4.4 (emphasis added)

    *Compare to*

For the purposes of this chapter—

(1) "Adjudicatory proceeding" means a proceeding before an agency *in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing. Without enlarging the scope of this definition*[.]

Mass. Ann. Laws ch. 30A, § 1 (citation omitted) (emphasis added)

    *Compare to*

**Me. Cmty. Health Options v. United States, 140 S. Ct. 1308, 1312 (2020) (Unlike the word "may," which implies discretion, the word "shall" usually connotes a requirement).**

[~~Moreover, State Defendants impliedly *admit* to the Court that Younger abstention is not warranted where, as here, Talasazan is barred from raising his constitutional arguments in the disciplinary proceeding. Def. Memo ISO MTD Pg. 2 ("pursuant to Rule 4.4(a) of the Rules of the Board of Bar Overseers [footnote 2]" states that it is "[p]romulgated pursuant to Supreme Judicial Court (SJC) Rule 4:01[.]") State Defendants recognize, on the one hand, that the Rules of the Board of Bar Overseers should be in accordance with and under Supreme Judicial Court Rules 1:01 *et seq.*, but on the other hand, fail to address the plain and ordinary meaning pursuant to Mass. SJC Rule 1:04 which States:~~

> ~~To the extent of *any conflict* between the Massachusetts Rules of Civil Procedure, the Massachusetts Rules of Criminal Procedure, the Massachusetts Rules of Appellate Procedure and the Rules of the Supreme Judicial Court, the Appeals Court, and the various Departments of the Trial Court, the Massachusetts Rules of Civil, Criminal and Appellate Procedure *shall control*.~~

---

(2) The agency may prescribe the form of subpoena, but it shall adhere, in so far as practicable, to the form used in civil cases before the courts. Witnesses shall be summoned in the same manner as witnesses in civil cases before the courts, *unless another manner is provided by any law*. Witnesses summoned shall be paid the same fees for attendance and travel as in civil cases before the courts, unless otherwise provided by any law.

(3) Any party to an adjudicatory proceeding shall be entitled as of right to the issue of subpoenas in the name of the agency conducting the proceeding. The party may have such subpoenas issued by a notary public or justice of the peace, or he may make written application to the agency, which shall forthwith issue the subpoenas requested. However issued, the subpoena shall show on its face the name and address of the party at whose request the subpoena was issued. Unless otherwise provided by any law, the agency need not pay fees for attendance and travel to witnesses summoned by a party.

(4) Any witness summoned may petition the agency to vacate or modify a subpoena issued in its name. The agency shall give prompt notice to the party, if any, who requested issuance of the subpoena. After such investigation as the agency considers appropriate it may grant the petition in whole or part upon a finding that the testimony, or the evidence whose production is required, does not relate with reasonable directness to any matter in question, or that a subpoena for the attendance of a witness or the production of evidence is unreasonable or oppressive, or has not been issued a reasonable period in advance of the time when the evidence is requested.

Mass. Ann. Laws ch. 30A, § 12 (citation omitted) (emphasis added)

~~*Quoting* Mass. SJC Rules 1:04 (emphasis added)]~~

**Moreover, OBCDM also failed to proceed and enforce the second subpoena by way of petitioning a court in Delaware to compel its disclosure or transfer it to the Supreme Judicial Court to enforce it.[14] *See* Mass. S.J.C. Rules 1:04, *supra; Compare* Mass. R. Civ. P. 45, *cognate to* Fed. R. Civ. P. 45 (c), (f). To make it Talasazan's prerogative to fly (or drive to) Delaware and move to quash the subpoena would have been an obtuse application of, and patently irreconcilable with, the State Rule cognate to the Federal Rules to which it applies. See Mass. S.J.C. Rules 1:04 (Rules of Civil Procedure Control, cognate to Fed. R. Civ. P.); *Compare* Fed. R. Civ. P. 45 (d)(3)(A) (mandatory grounds for quashing or modification of subpoena); *Compare* ALM R.B.B.O § 4.6 [footnote 11, supra]; *Compare* Alberts v. HCA, Inc., 405 B.R. 498, 503 (D.D.C. 2009) (subpoena – blatant abuse of power); See U.S. Const. art. IV, § 2, cl. 1; See also In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 239 (E.D.Pa2014).**

**Furthermore, State Defendants have entered default against Talasazan and,** State Defendants subpoenas *will be* fatally defective on its face**, assuming for arguments sake that,** if **the disciplinary proceeding were reopened and the default were vacated,** the State Defendants request and issue subpoenas in the disciplinary proceeding. See **ALM R.B.B.O § 4.6, supra; Mass. S.J.C. Rules 1:04;** *Compare* **Mass. R. Civ. P. 55, 45** *cognate to* **Fed. R. Civ. P. 55, 45;** *See also* AF Holdings, LLC v. Does 1-1,058 752 F.3d 990, 995 (D.C. Cir.2014) (when subpoena compels disclosure of information that is not properly

---

[14] *See* 03/17/2023 49 Plaintiff's Objection to Docket Sheet Instruction and MOTION for Orderly Sequences Ruling and Corrected Docket Sheet filed by Harel Talasazan. (Currie, Haley) (Entered: 03/17/2023); *See also* 03/17/2023 50 MEMORANDUM in Support re 49 Plaintiff's Objection to Docket Sheet Instruction and MOTION for Orderly Sequences Ruling and Corrected Docket Sheet filed by Harel Talasazan. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Gmail Attachment)(Currie, Haley) (Entered: 03/17/2023)

discoverable, burden subpoena imposes – no matter how slight – is necessarily undue). *See also* FAC, Exh. 5-8 (Rules and Cases cited **by Talasazan** therein); [~~Mass. S.J.C. Rules 1:01,~~ ~~infra~~ *~~Compare~~* ~~Mass. R. Civ. P. 45~~ *~~cognate to~~* ~~Fed. R. Civ. P. 45, infra.~~]

~~Notably, the Massachusetts Long Arm Statute provides: "[w]hen the law of this commonwealth requires that in order to effect service one or more designated~~ *~~individuals~~* ~~be~~ *~~served, service outside this commonwealth~~* ~~under this chapter~~ *~~shall be made~~* ~~upon the designated~~ *~~individual or individuals.~~*~~" Mass. Ann. Laws ch. 223A, § 8 (emphasis added);~~ *~~See~~* ~~Me. Cmty. Health Options, 140 S. Ct. 1312 (2020),~~ *~~supra~~*~~;~~ *~~Compare~~* ~~Hermanson v. Szafarowicz, 457 Mass. 39, 40, 927 N.E.2d 982, 985 (2010) (Where there is an irreconcilable conflict between a court rule and a statute, the statute supersedes the rule.)~~[15]

~~Pertinently to the case at hand, State Defendants conduct demonstrates the improper use of official power to compel Talasazan to submit to the wishes of State Defendants who yield it.~~ *~~See~~* ~~Fed. R. Civ. P. 45 (a)(4)(b);~~ *~~See also~~* ~~Firefighter Institute for Racial Equality v. St. Louis, 220 F.32 898, 903 (8th Cir. 2000) (subpoena was quashed when Plaintiff did not serve Defendant with notice of production subpoena);~~ *~~See also~~* ~~Call of the Wild Movie, LLC v. Does 1-1, 062, 770 F.Supp.2d 332, 361-62 (D.D.C. 2011) (subpoenas were quashed when Plaintiff faxed and emailed subpoena but did not provide personal service of subpoena);~~ *~~See~~*

---

[15] Service on foreign corporations is [also] provided by G. L. c. 223, § 38, as appearing in St. 1939, c. 451, § 61. This provides, "In an action against a foreign corporation . . . which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the preceding section [§ 37] relative to service on domestic corporations in general . . ."

The preceding section, § 37, as amended through St. 1965, c. 685, § 56, provides in pertinent part: ". . . In an action against a domestic corporation . . . service shall be made upon the president, treasurer, clerk . . . cashier, secretary, agent or other officer in charge of its business . . . ."

The statutes cited require service upon one of these designated individuals. This was not done. We are of opinion that this objection is well taken, and that for this reason the service was invalid.

*Quoting* Kagan v. United Vacuum Appliance Corp., 357 Mass. 680, 685, 260 N.E.2d 208, 211 (1970)

~~*also* Broumand v. Joseph, 522 F.Supp.3d 8, 23-24 (S.D.N.Y. 2021) (Court held that subpoenas modified to require witness testimony were unenforceable because they sought to compel witnesses to "attend" evidentiary hearing that was located outside Fed. R. Civ. P. 45(e) geographic limits.) [16] Thus, the State Defendants clearly bar the interposition of Talasazan's constitutional claims and the State Defendants proceedings do not afford an adequate opportunity to raise constitutional claims. *See* Middlesex, 457 U.S. 423, 435, *supra*.~~

~~[Nor did State Defendants defend its actions when OBCDM failed to proceed and enforce the second subpoena by way of petitioning a court in Delaware to compel its disclosure or transfer it to the Supreme Judicial Court to enforce it. [17] *See* Mass. S.J.C. Rules 1:04, *supra*; *Compare* Mass. R. Civ. P. 45, *cognate to* Fed. R. Civ. P. 45 (e), (f). To make it Talasazan's prerogative to fly (or drive to) Delaware and move to quash the subpoena would have been an obtuse application of, and patently irreconcilable with, the State Rule cognate to the Federal Rules to which it applies. *See* Mass. S.J.C. Rules 1:04 (Rules of Civil Procedure Control, cognate to Fed. R. Civ. P.); *Compare* Fed. R. Civ. P. 45 (d)(3)(A) (mandatory grounds for quashing or modification of subpoena); *Compare* Alberts v. HCA, Inc., 405 B.R. 498, 503 (D.D.C. 2009) (subpoena—blatant abuse of power); *See* U.S. Const. art. IV, § 2, cl. 1; *See also* In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 239 (E.D.Pa2014)].~~
Thus, without proper respect for, and the limits of its action to its constitutionally proscribed power and authority, the legality or legal qualification and competence of State Defendants

---

[16] *See also* Exxon Shipping Co. v. U.S. Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994) (non-parties are given special protection against the time and expense of complying with subpoenas)

[17] *See* 03/17/2023 49 Plaintiff's Objection to Docket Sheet Instruction and MOTION for Orderly Sequences Ruling and Corrected Docket Sheet filed by Harel Talasazan. (Currie, Haley) (Entered: 03/17/2023); *See also* 03/17/2023 50 MEMORANDUM in Support re 49 Plaintiff's Objection to Docket Sheet Instruction and MOTION for Orderly Sequences Ruling and Corrected Docket Sheet filed by Harel Talasazan. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Gmail Attachment)(Currie, Haley) (Entered: 03/17/2023)

are called into question and justify Talasazan's resort, to seek remedies and relief, to the federal court.[18]

### C. It is well settled that a State cannot instruct its officer to act in an illegal way, and types of dishonesty of belief or purpose State Defendants acted upon in the First Amended Complaint shows the willful rendering of imperfect performance and abuse of power to forcefully obtain terms against Talasazan.

In its dealing with Talasazan, State Defendants unreasonable and unfounded refusal to obey constitutionally mandated limitations reflects the fact that the Petition for discipline was brought in bad faith. See Mass. S.J.C. Rules 1:04[1], 1:05. Public records show that virtual depositions conducted on the Teams platform equip its users, here OBCDM, with options such as trimming the video. *See* **FAC Exh. 5, Pg. 2**. [Exh, ISO]. State Defendants knew or should have known that Teams was never intended for OBCDM to use for any depositions. *See* FAC Exh. 3**, Pgs. 9-10, 12-13**[5-8]; *Compare* M.G.L.A. Const. Amend. Art. 62 § 1 ("[T]he credit of the Commonwealth *shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed*" (emphasis added)[19]); *Compare* Mass. SJC Rules 1:05. Teams supplies

---

[18][With that said] Talasazan had also put measures in place to ensure that the instant case can be heard and the merits be so determined without the underlying disciplinary proceeding being filed, commencing or continuing. *See* [Ex. Motion to Re-issue Summonses,] Letter dated 12/02/2022 Motion Package for Motion for Extension of Time. It is well settled, the substance of the motion – not the label – controls. *See* Watros v. Greater Lynn Mental Health & Retardation Ass'n,, 37 Mass. App. Ct. 657, 662 n.7 (1994) [quoting] S.C., 421 Mass. 106 (1995) (citing multiple practice guides for principle that "[i]t is, of course, the substance of a motion and not its technical name or label that determines its nature and legal effect") **Moreover, with respect to the Motion for Extension of Time "allowed without objection":** *See* **Lambley v. Kameny, 43 Mass. App. Ct. 277, 280 (1997) ("the label attached to a pleading or motion is far less important than its substance"); Colorio v. Marx, 72 Mass. App. Ct. 382, 385 (2008), quoting Honer v. Wisniewski, 48 Mass. App. Ct. 291, 294 (1999) ("Courts may determine whether and under what section relief might be granted; the label attached to the motion is not dispositive"); Watros v. Greater Lynn Mental Health & Retardation Ass'n, 37 Mass. App. Ct. 657, 662 n.7 (1994), S.C., 421 Mass. 106 (1995) (citing multiple practice guides for principle that "[i]t is, of course, the substance of a motion and not its technical name or label that determines its nature and legal effect")Smith & Zobel, Rules Practice § 7.11 (1974); 5 Wright & Miller, Federal Practice and Procedure § 1196 (2d ed. 1990).**

[19] **In this respect, the instant case Talasazan has had to act very cautiously and do his best to observe and not interfere with Agreement 5348 (*See* FAC Exh. 3 Pgs. 9-10, 12-13[5-8]; Compare M.G.L.A. Const. Amend. Art. 62 § 1) as those duties that are obligating Microsoft and State Defendants. For instance, the**

OBCDM with an arsenal of powerful tools to make certain the facts it needed during the 1st virtual deposition and exclude whatever facts did not. *See* **FAC Exh. 5, Pg. 2** [~~Exh. ISO~~]. In short order, OBCDM twisted the facts of the 1st virtual deposition in to relevant and far more potent claims to assail Talasazan. **FAC Exh. 5, Pg. 2.** [*Id*]. Thus, the Teams platform is prone to prosecutorial abuse, Defendants should have known that it was so prone, and OBCDM abused Teams anyhow. *Id.*

In fact, before attending the virtual deposition on the Microsoft Teams (Teams) platform taken on September 23, 2021 ("1st Depo"), Talasazan raised these concerns. *See* FAC; *See* **Aff. ISO Pg. 16-17 ¶¶ 46-48, Exh. ISO 31-34** [~~Exh, ISO~~]. Notably, before the 1st Depo occurred, Talasazan raised issues to Anderson in writing and over several confer phone discussion. **Id.** [*~~See Exh. ISO~~*]. Anderson threatened Talasazan with administrative suspension if he did not attend the 1st Depo. **Id.** [*~~See Exh. ISO.~~*] When Talasazan raised the issue with the Board of Bar Overseers, his request for an investigation was denied. Thus, State Defendants do not afford adequate protection to Talasazan in the first instance through and including the current posture of the disciplinary matter. Thus, the petition for discipline rests on improperly and illegally obtained evidence for which illegal procedures were applied to obtain it and constitutional arguments raised made no difference, one way or the other. *See* **M.G.L.A. Const. Amend. Art. 62 § 1;** Hawaii Housing Authority v. Midkiff, 467 U.S. 229,

---

Defendants Joint Motion to Enlarge Time to File Responsive Pleading *Compare* to M.G.L.A. Const. Amend. Art. 62 § 1, quoted supra; *Compare* FAC, Exh. 3 (notification requirements, indemnification); *See also* Landgraf v. Usi Film Prods. 511 U.S. 244 (1994); *See also* Perry v. United States. 294 U. S. 330, 353 (1935) ("[T]he right to make binding obligations is a competence attaching to sovereignty"); cf. Hart, The Concept of Law, at 145-146 (noting that the ability to limit a body's future authority is itself one aspect of sovereignty) (*Quoting Windstar, supra (citations omitted).)*

245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void")[20].

In a similar vein, the principles or interests that arise in the instant case trigger precepts inherently federal in character. *See* **Aff. ISO Pg. 1-9 ₱₱ 2-27** [Aff. ISO and Exh]. For instance, OBCDM's use of the mail for official business with the Supreme Judicial Court is wholly separate and distinct from mail correspondences that are used to receive and send mail for the investigation involving an Attorney. Among other things, the State Defendants marking machines so used to send mail is: two wholly separate and distinct entities; bear two different and distinct addresses; the rates so paid changed from 57 cents, to so mail with Quadient Inc. ("Quadient") formerly known as Neopost, to 60 cents for a first-class mail marked envelope, therewith. *See* **Aff. ISO Pg. 15 ₱ 42.** [Exh. ISO] Upon information and belief, Talasazan caused this to occur, and up to and including the present date, Quadient formerly known as Neopost has the wrong address on file with the Secretary of State for the State of Massachusetts[21]. *See* **Aff. ISO Pg. 14 ₱ 44.** [Exh. ISO] *See* First Natl. City Bank v. Banco Para El Comercio de Cuba 462 U.S. 611 (1983).

---

[20] See also Missouri Pacific R. Co. v. Nebraska, 164 U.S. 403, 41 L. Ed. 489, 17 S. Ct. 130 (1896); See also Calder v. Bull, 3 U.S. 386, 3 Dall. 386, 1 L. Ed. 648 (1798) ("An act of the Legislature (for I cannot call it a law) contrary to the great first principles of the social compact, cannot be considered a rightful exercise of legislative authority. . . . A few instances will suffice to explain what I mean. . . [A] law that takes property from A. and gives it to B: It is against all reason and justice, for a people to entrust a Legislature with such powers; and, therefore, it cannot be presumed that they have done it. The genius, the nature, and the spirit, of our State Governments, amount to a prohibition of such acts of legislation; and the general principles of law and reason forbid them" (emphasis deleted)).

[21] There are several ways that the mail items can apply in terms of deception and unfairness that Talasazan has been and still is injured by, and the same said ways extrapolate to the general public and coordinate branches of the states and federal government. *See* Exh. ISO [ ] Thus, substantial justice is not yet done, among other reasons, since there are unresolved issues with online payments made to credit such said marking machines. Ensuring that a government record is verifiable is essential to the coordinate branches of government in several respects. By way of example, among the many other ways Talasazan can furnish to the Court – with time – the integrity of the democratic institution this government is founded upon, with which such marked mail can be so abused, among other things, for instance: voting, vis-à-vis mailing nonresidents of the State mail ballots to an outdated address (like State Defendants did to Talasazan with the first subpoena it had issued, such marked mail must be properly accounted for in order to hold accountable and responsible

Thus, in the instant case, State Defendants have used the mail in a manner that deceives Talasazan and violates his constitutional rights. *See* U.S. Const. art. IV, § 2, cl. 1; *See also* U.S. Const. art. I § 8, cl. 3; *Cf.* United States v. James Daniel Good Real Prop., 510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993). Talasazan has asserted, and the exhibits [~~affixed and filed concurrently herewith~~] show, the federal interests must be considered as a matter of comity [22] . *See* Fletcher, Cyclopedia of Corporations, Permanent Edition, Vol. 1 § 48 (successor liability) (cf. exceptions (3,4) § 63 (quasi-public corporation); See 40 U.S.C. 471, 472 (a)(b)(d); *Compare* 40 U.S.C. 757 § 110 (a)(1); cf. 40 U.S.C. 254 § 304 (c)(1); 40 U.S.C. 255 § 305 (a)(b)(c) *See* (c) most importantly ("paramount to all other liens")[23]; *cf.* 40 U.S.C. 511.

Saliently, by virtue of the fact that legal arguments were authored by Stewart, the Petition for Discipline against Talasazan is the product of the unauthorized practice of law. In Massachusetts, where a court learns that a person is engaged in the unauthorized practice of law, the court is obligated to take corrective action. *See* Rental Prop. Mgmt. Servs. v. Hatcher, 479 Mass. 542, 551, 97 N.E.3d 319, 329 (2018) (and cases cited therein). Notably here, the properties of the portable document format (PDF) documents shows Stewart is the author, and Anderson's signature is affixed therewith. In the usual course, the Court should consider whether the unauthorized practice of law occurred by inadvertence or by design.

---

the State agency that purports it mailed it and certifies that it is meeting its duties and obligations. There is no way to know; the objective measure to know if it did is too uncertain to properly investigate or determine.

[22] Under Commonwealth v. Biagiotti 451 Mass. 599, 888 N.E.2d 364 (2008) Microsoft and Neopost is styled as a quasi public entity and it has entered into public service. *Id.*; *See* Munn v. State of Illinois 94 U.S. 113, 24 L.Ed. 77 (1876); *See also* Mass. S.J.C. Rules 1:05.

[23] Talasazan is in no better a financial position than when he fled from Boston at the end of July, 2021. By depositing the envelopes affixed herewith he means to furnish and satisfy the bond requirement. Talasazan reserves the right any sum equivalent to compensate or that he may retain. Talasazan also reserves the right to be compensated any sum determined from it, including but not limited to any sum over and above the bond amount set.

Rental Prop, 479 Mass. 551, *supra*. Where, as here, it appears that it is by design "only immediate dismissal will bring an end to this "game."" *Quoting* Rental Prop. Mgmt. Servs. v. Hatcher, 479 Mass. Pg. 552 (2018).

Thus, the nature of the State Defendants imperative to proceed with its business absent minded of the instant case and its own ruling allowing it, and absent sufficient service on or dignity to Talasazan, inextricably affects and damages Talasazan. *See* Mass. S.J.C. Rules 1:0~~4~~ [~~1~~]; *See* Fed. R. Civ. P. 2 (one form of action); *See* Middlesex at pgs. 431-32, supra; *See* Morales at pg. 381, supra; **Compare See 13B Wright, Miller, & Steinman, Federal Practice and Procedure § 1019 (due process violation, exception to bar disciplinary proceedings)**. The same reasoning applies to State Defendants not to proceed with its action while the instant case is still pending. *Id.*[24]; *See* **Aff. ISO Pg. 19 ¶ 55;** [~~Aff. ISO and Exh.~~], *Compare to* Phillips v. Washington Legal Foundation, 524 U.S. 156 (1998) (case involving IOLTA program, interest income generated by funds held in IOLTA account is the private property of the owner of the principal, here, Talasazan's money to open the account is what's left in his IOLTA account at this time and so too the interest accrued) *See* Exhibit in Support of Motion to Supplement, Order made to Bank of America) *cf.* Brown v. Legal Foundation of Washington, 538 U.S. 216 (2003) *Compare to* In the Matter of Olchowski, 485 Mass. 807 (2020); **Compare Mass. Ann. Laws ch. 211, § 2A; But See Mass. Ann. Laws ch. 29, § 3; Compare Mass. Ann. Laws ch. 29A, § 1.** It flows in legal and equitable order to deny State Defendants Motion to Dismiss, restrain and enjoin State Defendants and consider the public

---

[24] With regard to State Defendants and Microsoft Corporation, *United States v. Winstar Corp.*, 518 U.S. 839, 919 (1996) favors contract remedies alone where plaintiff's alleged rights that arise solely from the terms of contract. This is so even if it ultimately is determined that no breach occurred. *Id.* See Hughes Commc'ns Galaxy, Inc. v. U.S., 271 F.3d 1060, (Fed. Cir. 2001); See also Castle v. U.S., 301 F.3d 1328, (Fed. Cir. 2002); *Compare* M.G.L.A. Const. Amend. Art. 62 § 1; *Compare* FAC Exh. 3, Doc. 6-3, Pgs. 12-13 (¶¶ 7-8)

interests that may be extrapolated from the claims and evidence presented in the instant case to the public at large.

### D. Sovereign immunity is not warranted where, as here, federal power must prevent state violations of the Constitution, and Supreme Legal Authority serves as an effective mechanism for providing relief against unconstitutional conduct by State officers.

Historically, the Eleventh Amendment was thought to be based upon avoiding an imposition on the State Treasury. *See* Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994) ("the impetus for the Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State's treasury"). Here, a judgment against State Defendants will be paid first by Defendant Microsoft and, assuming for arguments sake Microsoft is not in the analysis, it certainly *not* be paid by the treasury without it. *See* In re Olchowski, 485 Mass. 807 (2020); **See FAC Exh. 3 Pgs. 9-10, 12-13[5-8]; *Compare* M.G.L.A. Const. Amend. Art. 62 § 1; *Compare* Mass. Ann. Laws ch. 211, § 2A; *But See* Mass. Ann. Laws ch. 29, § 3; *Compare* Mass. Ann. Laws ch. 29A, § 1**[2526]. Nor does the State Government exert significant control over Defendant Microsoft Corporation or the Massachusetts IOLTA committee. Nor do the State executive or legislative branch appoint the policymakers for the Massachusetts IOLTA Committee, who will pay the judgment.

---

[25] **As used in this chapter and *notwithstanding any other law to the contrary,* "costs of maintenance and operation of the judicial branch" shall include all costs and expenses related to the operation of the supreme judicial court, the appeals court, the trial court and its departments and divisions, district attorneys' offices, law libraries, registries of probate, clerks' offices and expenses incurred for assignment by the court of counsel as the court determines, and without limiting the generality of the foregoing shall also include all salaries of probation and court officers and other persons employed in such courts, offices and places, but in no event shall costs include any costs or expenses related to registries of deeds, sheriffs' offices, county jails or county houses of correction, except as otherwise provided by law.**
**_Quoting_ Mass. Ann. Laws ch. 29A, § 1 (emphasis added)**
[26] **(All _Quoting_ Mass. Ann. Laws, above, cited by LexisNexis, Lexis Advance through all legislation of the 2022 Legislative Session of the 192nd General Court)**

Furthermore, it is well settled that in order for the Constitution to be the Supreme law of the land, injunctive relief must be allowed against State Officers who violate it, through the use of a statutory framework that enables it. Alden v. Maine, 527 U.S. 706, 711, 119 S. Ct. 2240, 2246 (1999) In <u>Alden v. Maine</u> the exception to – or essential part of –the doctrine of the sovereign immunity that the United States Supreme Court recognized in Ex parte Young (1908) 209 US 123, 52 L Ed 714, 28 S Ct 441, is based in part on the premise that (1) sovereign immunity bars relief against states and their officers in both state and federal courts, and (2) certain suits for injunctive relief against state officers must therefore be permitted if the Federal Constitution is to remain the supreme law of the land, even though it might otherwise seem to be an obvious conclusion that a restraint upon a state's officers is a restraint upon the state's sovereignty[27]. *Id.*

Qualified immunity inquiry is a two-part test. A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. USCS Const. Amend. 14. In the instant case, the Board clearly had a duty to act within the fundamental guaranty of due process when it issued and enforced a facially invalid subpoena, which is absolute and not merely relative. Hammond Packing Co. v. Arkansas, 212 U.S. 322 (1909). The FAC shows that State Defendants have violated this fundamental guarantee, and the Rules of the Board of Bar Overseers, cited above, systematically contravenes Talasazan's right to it. *See Generally* FAC; *See also* FAC Exh. 5-9.

---

[27] For purposes of applying the Ex parte Young rule, which the Supreme Court has extended to state courts, it is necessary, in order to give adequate protection to constitutional rights, to make a distinction between valid and invalid state laws, as determining the character of a suit against state officers. Id.

Moreover, the dereliction in Anderson's duty to direct Stewart further evinces the ""'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor" exists such that "'the supervisor's conduct led inexorably to the constitutional violation.'" Pineda, 533 F.3d at 54 (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995))." *Quoting* Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009).

For the reasons and authorities above, the State Defendants Motion to Dismiss should be denied.

Dated: 4/10/2023                                    Respectfully Submitted,

Harel Talasazan, Plaintiff
520 N Kings Road Apt. 305
+Los Angeles, California 90048
hareltala@gmail.com

## CERTIFICATE REGARDING LOCAL RULE 7.1

I have conferred with Attorney Lewis, Attorney for Defendant Microsoft Corporation, and have attempted to confer with Attorney Marks, Attorney for named Defendants Dorothy Anderson, Board of Bar Overseers, Office of Bar Counsel, and Matthew Stewart pursuant to Local Rule 7.1, in an attempt to narrow or resolve the issue presented by the motion.

Harel Talasazan, Plaintiff

## CERTIFICATE OF SERVICE

I, Harel Talasazan, hereby certify that a true copy of the foregoing was served upon the persons listed below by personal service and by E-Mail on

APRIL 10, 2023 .

DLA Piper LLP
Attn: Attorney Paul B Lewis
33 Arch Street 26th Floor
Boston, MA 02110-1447
Paul.lewis@dlapiper.com

Office of the Attorney General
Attn: Assistant Attorney General David Marks, Esq.
One Ashburton Place 18th Floor
Boston, MA 02108 USA
David.marks@mass.gov

Harel Talasazan, Plaintiff
520 N Kings Road Apt. 305
+ Los Angeles, California 90048
hareltala@gmail.com